No. 2024-1541

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE FEDERAL CIRCUIT**

**NETFLIX, INC.,**

*Appellants*,

v.

**DIVX, LLC,**

*Appellee*.

APPEAL FROM THE UNITED STATES PATENT AND TRADEMARK OFFICE, PATENT TRIAL AND APPEAL BOARD NO. IPR2020-00558

# DIVX, LLC'S RESPONSE BRIEF

Nathan Nobu Lowenstein
Kenneth Weatherwax
Parham Hendifar
LOWENSTEIN & WEATHERWAX LLP
1016 Pico Blvd.
Santa Monica, California 90405
Telephone: (310) 307-4500
Facsimile: (310) 307-4509

*Counsel for Patent Owner-Appellee*
*DivX LLC*

September 13, 2024

# PATENT CLAIMS-AT-ISSUE

**Claim 1**

1. A playback device for playing protected content from a plurality of alternative streams, comprising:

a set of one or more processors; and

a non-volatile storage containing an application for causing the set of one or more processors to perform the steps of:

obtaining a top level index file identifying a plurality of alternative streams of protected video, wherein each of the alternative streams of protected video includes partially encrypted video frames that are encrypted using a set of common keys comprising at least one key, and wherein the partially encrypted video frames contain encrypted portions and unencrypted portions of data;

obtaining a copy of the set of common keys;

detecting streaming conditions for the playback device;

selecting a stream from the plurality of alternative streams of protected video based on the detected streaming conditions;

receiving a container index that provides byte ranges for portions of the selected stream of protected video within an associated container file;

requesting portions of the selected stream of protected video based on the provided byte ranges;

locating encryption information that identifies encrypted portions of frames of video within the requested portions of the selected stream of protected video;

decrypting each encrypted portion of the frames of video identified within the located encryption information using the set of common keys; and

playing back the decrypted frames of video obtained from the requested portions of the selected stream of protected video.

**Claim 2**

2. The playback device of claim 1, wherein the step of requesting portions of the selected stream further comprises the step of obtaining a container file containing protected video from at least one of the plurality of alternative streams, where the container file also includes encryption information that identifies portions of frames of video that are encrypted and a reference to at least one key from the set of common keys to utilize in accessing the encrypted portions of the frames of video.

**Claim 3**

3. The playback device of claim 1, wherein the located encryption information comprises a reference to the start of an encrypted block of data.

**Claim 4**

4. The playback device of claim 3, wherein the located encryption information further comprises the size of the encrypted block of data.

**Claim 5**

5. The playback device of claim 3, wherein the located encryption information further comprises cryptographic information that can be utilized to access the encrypted portion of the frame.

**Claim 6**

6. The playback device of claim 5, wherein the cryptographic information is a reference to at least one key from the set of common keys.

**Claim 7**

7. The playback device of claim 1, wherein the application is further for causing the set of processors to perform the steps of:

detecting a change in the streaming conditions;

identifying a second alternative stream of protected video based on the detected change;

receiving a container index that provides byte ranges for portions of the second alternative stream of protected video within a second associated container file;

requesting portions of the second alternative stream of protected video based on the provided byte ranges;

decrypting each encrypted portion of the frames of video from the requested portions of the second alternative stream of protected video using the set of common keys; and

playing back the decrypted frames of video from the requested portions of the second alternative stream of protected video.

**Claim 8**

8. The playback device of claim 1, wherein the application is further for causing the set of processors to perform the steps of:

transmitting a request for content to a set of one or more content distribution servers; and

receiving the content from the set of one or more content distribution servers.

**Claim 9**

9. The playback device of claim 8, wherein the application is further for causing the set of processors to perform the steps of:

transmitting a request for cryptographic information including the set of common keys to a set of one or more DRM servers; and

receiving the cryptographic information from the set of one or more DRM servers.

**Claim 10**

10. The playback device of claim 1, wherein the application is further for causing the set of processors to perform the step of obtaining the container index from at least one file selected from the group consisting of: the associated container file containing the selected stream of protected content; and a separate file to the associated container file containing the selected stream of protected content.

**Claim 11**

11. The playback device of claim 1, wherein the common set of keys comprises a plurality of keys.

**Claim 12**

12. A method for playing protected content from a plurality of alternative streams on a playback device, the method comprising:

obtaining a top level index file identifying a plurality of alternative streams of protected video, wherein each of the alternative streams of protected video includes partially encrypted video frames that are encrypted using a set of common keys comprising at least one key, and wherein the partially encrypted video frames contain encrypted portions and unencrypted portions of data;

obtaining a copy of the set of common keys;

detecting streaming conditions for the playback device;

selecting a stream from the plurality of alternative streams of protected video based on the detected streaming conditions;

receiving a container index that provides byte ranges for portions of the selected stream of protected video within an associated container file;

requesting portions of the selected stream of protected video based on the provided byte ranges;

locating encryption information that identifies encrypted portions of frames of video within the requested portions of the selected stream of protected video;

decrypting each encrypted portion of the frames of video identified within the located encryption information using the set of common keys; and

playing back the decrypted frames of video obtained from the requested portions of the selected stream of protected video using a decoder.

**Claim 13**

13. The method of claim 12, wherein requesting portions of the selected stream further comprises obtaining a container file containing protected video from at least one of the plurality of alternative streams, where the container file also includes encryption information that identifies portions of frames of video that are encrypted and a reference to at least one key from the set of common keys to utilize in accessing the encrypted portions of the frames of video.

**Claim 14**

14. The method of claim 12, wherein the located encryption information comprises a reference to the start of an encrypted block of data.

**Claim 15**

15. The method of claim 14, wherein the located encryption information further comprises the size of the encrypted block of data.

**Claim 16**

16. The method of claim 14, wherein the located encryption information further comprises cryptographic information that can be utilized to access the encrypted portion of the frame.

**Claim 17**

17. The method of claim 16, wherein the cryptographic information is a reference to at least one key from the set of common keys.

**Claim 18**

18. The method of claim 12 further comprising:

detecting a change in the streaming conditions;

identifying a second alternative stream of protected video based on the detected change;

receiving a container index that provides byte ranges for portions of the second alternative stream of protected video within a second associated container file;

requesting portions of the second alternative stream of protected video based on the provided byte ranges;

decrypting each encrypted portion of the frames of video from the requested portions of the second alternative stream of protected video using the set of common keys; and

playing back the decrypted frames of video from the requested portions of the second alternative stream of protected video.

**Claim 19**

19. The method of claim 12 further comprising:

transmitting a request for content to a set of one or more content distribution

servers; and

receiving the content from the set of one or more content distribution servers.

**Claim 20**

20. The method of claim 19 further comprising:

transmitting a request for cryptographic information including the set of common keys to a set of one or more DRM servers; and

receiving the cryptographic information from the set of one or more DRM servers.

**Claim 21**

21. The method of claim 12 further comprising obtaining the container index from at least one file selected from the group consisting of: the associated container file containing the selected stream of protected content; and a separate file to the associated container file containing the selected stream of protected content.

**Claim 22**

22. The method of claim 12, wherein the common set of keys comprises a plurality of keys.

**Claim 23**

23. The playback device of claim 1, wherein:

the container index is part of a hierarchical index; and

the application is further for causing the set of processors to perform the step of:

obtaining a lower layer index that identifies the location of frames

within a specific requested portion of the selected stream of protected video; and

identify partially encrypted video frames from within the specific requested portion of the selected stream using the lower layer index.

**Claim 24**

24. The method of claim 12, wherein:

the container index is part of a hierarchical index; and

the method further comprises:

obtaining a lower layer index that identifies the location of frames within a specific requested portion of the selected stream of protected video; and identify partially encrypted video frames from within the specific requested portion of the selected stream using the lower layer index

## CERTIFICATE OF INTEREST

Counsel for Appellee DivX LLC certifies the following:

**1. The full name of every party or amicus represented by me is:**

DivX, LLC

**2. The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:**

None

**3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus represented by me are:**

DivX CF Investors LLC

**4. The names of all law firms and partners/associates that have appeared for the party in the lower tribunal or are expected to appear for the party in this court and are not already listed on the docket for the current case are:**

Flavio Rose, Edward Hsieh*, Patrick Maloney*, Bridget Smith*, Jason C. Linger*, LOWENSTEIN & WEATHERWAX LLP (*no longer with firm)

**5. The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal are:**

Notice of Related Cases already filed.

**6. Organizational Victims and Bankruptcy Cases. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and .1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).**

None

Date: September 13, 2024

*/s/ Nathan Nobu Lowenstein*
Nathan Nobu Lowenstein
*Counsel for Patent Owner-Appellee*
*DivX LLC*

# TABLE OF CONTENTS

Page

PATENT CLAIMS-AT-ISSUE ........ i

CERTIFICATE OF INTEREST ........ ix

TABLE OF CONTENTS ........ x

TABLE OF AUTHORITIES ........ xii

STATEMENT OF RELATED CASES ........ xvi

STATEMENT OF ISSUES ON APPEAL ........ 1

INTRODUCTION ........ 2

STATEMENT OF THE CASE ........ 5

STATEMENT OF THE FACTS ........ 6

A. Technological Background. ........ 6

B. Proceedings Before The Board. ........ 9

SUMMARY OF THE ARGUMENT ........ 13

ARGUMENT ........ 17

I. Standard Of Review. ........ 17

II. The Board's Claim Interpretation Is Supported By Plain Meaning, The Specification, And Unrebutted Expert Testimony ........ 18

A. The Plain Meaning Supports The Board's Interpretation. ........ 18

B. The Patent's Specification And DivX's Unrebutted Expert Testimony Support The Board's Claim Interpretation. ........ 22

1. Locating The Claimed Encryption Information Within The Requested Portions Of Video Was A "Central Aspect" Of The Invention That Required Modification Of The Standard File Format. .......... 23

2. All Embodiments Support The Board's Interpretation. .......... 26

III. Netflix's Arguments Fail. .......... 29

A. Netflix Fails To Show That The Board's Interpretation Is Inconsistent With The Plain Meaning. .......... 29

1. The Board's Interpretation Is Not Contrary To Precepts Of English Grammar. .......... 29

2. The Board's Interpretation Is Consistent With The Language Of Claim 1 As A Whole. .......... 43

B. Netflix's Arguments Based On The Intrinsic Record Fail. .......... 44

1. Netflix's Attorney Argument That Not All Embodiments Of The Patent Support The Board's Interpretation Fails. .......... 44

2. The Board's Interpretation Does Not Import A Limitation From The Embodiments. .......... 51

3. The Board's Claim Interpretation Is Consistent With The '588 Patent's Prosecution History. .......... 55

C. The Board's Claim Interpretation Is Fully Consistent With The Claim Language Of Related Patents. .......... 58

CONCLUSION .......... 64

CERTIFICATE OF SERVICE .......... 65

CERTIFICATE OF COMPLIANCE .......... 66

# TABLE OF AUTHORITIES

**COURT DECISIONS ........................................ PAGE(S)**

*Acoustic Tech., Inc. v. Itron Networked Sols., Inc.*,
949 F.3d 1366 (Fed. Cir. 2020) ........................................ 27

*Athletic Alternatives, Inc. v. Prince Mfg., Inc.*,
73 F.3d 1573 (Fed. Cir. 1996) ........................................ 63

*In re Baxter Int'l, Inc.*,
678 F.3d 1357 (Fed. Cir. 2012) ........................................ 19

*Barnhart v. Thomas*,
540 U.S. 20 (2003) ........................................ 34

*Chamberlain Group, Inc. v. Lear Corp.*,
516 F.3d 1331 (Fed. Cir. 2008) ........................................ 57

*Cyan, Inc. v. Beaver Cty. Emples. Ret. Fund*,
583 U.S. 416 (2018) ........................................ 38

*D.A.N. Joint Venture Iii v. Hofmeister*,
2011 Mich. App. LEXIS 2061 (Ct. App. Mich. Nov. 22, 2011) ........................................ 33

*Demko v. United States*,
216 F.3d 1049 (Fed. Cir. 2000) ........................................ 36

*E.I Du Pont de Nemours & Co. v. Green*,
411 A.2d 953 (Del. Sup. Ct. 1980) ........................................ 37

*Enzo Biochem, Inc. v. Applera Corp.*,
780 F.3d 1149 (Fed. Cir. 2015) ........................................ 56

*Facebook, Inc. v. Duguid*,
592 U.S. 395 (2021) ........................................ 35

*Finisar Corp. v. DirecTV Group, Inc.*,
523 F.3d 1323 (Fed. Cir. 2008) ........................................ 39, 41, 44

*Flex-Rest, LLC v. Steelcase, Inc.*,
455 F.3d 1351 (Fed. Cir. 2006) ........................................ 56

*Gamesa Eolica, S.A. v. GE*,
359 F. Supp. 2d 790 (W.D. Wis. 2005) ........................................................... 42

*Heyman v. Cooper*,
31 F.4th 1315 (Fed. Cir. 2022) ........................................................................ 34

*Hill-Rom Servs. v. Stryker Corp.*,
755 F.3d 1367 (Fed. Cir. 2014)......................................................................... 58

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys.*,
381 F.3d 1111 (Fed. Cir. 2004)......................................................................... 58

*Inverness Med. Switz. GmbH v. Warner Lambert Co.*,
309 F.3d 1373 (Fed. Cir. 2002)......................................................................... 63

*Knowles Elecs. LLC v. Iancu*,
886 F.3d 1369 (Fed. Cir. 2018)......................................................................... 17

*Koninklijke Philips N.V. v. Google LLC*,
948 F.3d 1330 (Fed. Cir. 2020)......................................................................... 28

*Kyocera Wireless Corp. v. Int'l Trade Comm'n*,
545 F.3d 1340 (Fed. Cir. 2008)......................................................................... 56

*Lockhart v. United States*,
577 U.S. 347 (2016)........................................................................................... 34

*In re Magnum Oil Tools Int'l, Ltd.*,
829 F.3d 1364 (Fed. Cir. 2016).................................................................. 59, 60

*Merck & Co. v. United States*,
499 F.3d 1348 (Fed. Cir. 2007)......................................................................... 36

*Microsoft Corp. v. Biscotti, Inc.*,
878 F.3d 1052 (Fed. Cir. 2017)......................................................................... 60

*Netflix, Inc. v. DivX, LLC*,
84 F.4th 1371 (Fed. Cir. 2023) ........................................................................ 18

*Novartis Pharms. Corp. v. Accord Healthcare, Inc.*,
38 F.4th 1013 (Fed. Cir. 2022). .................................................................. 16, 49

*Pers. Web Techs., LLC v. Apple,*
*Inc.*, 917 F.3d 1376 (Fed. Cir. 2019 ) .......................................................... 22

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005)........................................................... passim

*Quality Edge, Inc. v. Rollex Corp.*,
709 Fed. Appx. 1000 (Fed. Cir. 2017) .......................................................... 40

*Res. Conservation Group, LLC v. United States*,
597 F.3d 1238 (Fed. Cir. 2010)................................................................ 15, 36

*Sci. Applications Int'l Corp. v. United States*,
154 Fed. Cl. 594 (2021) .............................................................................. 40

*Shire Dev. LLC v. Teva Pharms. USA, Inc.*,
2019 U.S. Dist. LEXIS 31753,
2019 WL 969638 (D. Del. Feb. 28, 2019) ........................................... 41, 42, 43

*St. Jude Med. v. Volcano Corp.*,
Civil Action No. 12-441-RGA,
2013 U.S. Dist. LEXIS 75814 (D. Del. May 30, 2013).................................... 42

*Teva Pharms. USA, Inc. v. Sandoz, Inc.*,
574 U.S. 318 (2015)........................................................................ 17, 18, 30, 51

*Tiger Natural Gas, Inc. v. United States*,
61 Fed. Cl. 287 (2004) .................................................................................. 21

*TQ Delta, LLC v. Cisco Sys.*,
942 F.3d 1352 (Fed. Cir. 2019).................................................................... 52

*TriVascular, Inc. v. Samuels*,
812 F.3d 1056 (Fed. Cir. 2016).................................................................... 59

*Ultimate Pointer, L.L.C. v. Nintendo Co.*,
816 F.3d 816 (Fed. Cir. 2016)...................................................................... 56

*Uniloc 2017 LLC v. Facebook, Inc.*,
No. 2019-2159, 2021 WL 5370480 (Fed. Cir. Nov. 18, 2021) ......................... 41

*United States v. American Trading Co.*,
17 C.C.P.A. 368 (CCPA 1930) ........ 37

*United States. Nat'l Bank v. Independent Ins. Agents of Am.*,
508 U.S. 439 (1993) ........ 39, 44

*UUSI, LLC v. United States*,
131 Fed. Cl. 244 (2017) ........ 59

*Verizon Servs. Corp. v. Vonage Holdings Corp.*,
503 F.3d 1295 (Fed. Cir. 2007) ........ 57

*Vitronics Corp. v. Conceptronic*,
90 F.3d 1576 (Fed. Cir. 1996) ........ 23

**REGULATIONS**

37 C.F.R. § 42.65 ........ 48

## STATEMENT OF RELATED CASES

The *Inter Partes* Review ("IPR") at issue was the subject of a previous appeal to this court, case no. 2022-1083, wherein this Court remanded the case to the Patent Trial and Appeal Board ("Board") for further proceedings. The present appeal is of the Board's decision on remand ("Decision" or "Second-FWD"). The prior appeal did not relate to, or make any holding relevant to, the issues on this appeal.

The following actions may be affected by this Court's decision: *DivX, LLC v. Netflix, Inc.*, No. 2-19-cv-01602 (C.D. Cal.); *DivX, LLC v. Hulu, LLC*, No. 2-19-01606 (C.D. Cal.) (consol. with 2-19-cv-01602). Appellee, DivX, LLC ("DivX" or "Patent Owner"), is aware of no other cases pending in any court or tribunal that will directly affect or be directly affected by the Court's decision in this appeal.

## STATEMENT OF ISSUES ON APPEAL

Whether the Board erred in construing claim limitation 1[l] where its construction is supported by the plain meaning, every embodiment of the patent, and the testimony of both experts.

## INTRODUCTION

The Board's Decision should be affirmed. This appeal concerns the proper interpretation of limitation 1[l] and, more specifically, how the three clauses within the limitation relate to one another:

> [1] ***locating*** encryption information [2] that identifies encrypted portions of frames of video [3] ***within*** the requested portions of the selected stream of protected video.[1]

As the Board found, "it is reasonable that the second and third clauses of the limitation *both* modify the first clause ..." Appx13 (emphasis in original). The first clause is "locating encryption information." The second clause tells us what ***type*** of encryption information is being located, *i.e.*, encryption information "that identifies encrypted portions of frames of video." The third clause tells us ***where*** that type of "encryption information" is located, *i.e.*, "***within*** the requested portions of the selected stream of protected video."

The Board's interpretation is supported by the plain meaning and the intrinsic and extrinsic evidence. The Board recognized the natural relationship between the word "locating" in the first clause and the word "within" in the third clause. The Board further determined that the specification—the best guide for discerning the meaning of a disputed term—"supports *only one* of the two

---

[1] Claim 12, the other independent claim, contains an identical limitation.

proposed interpretations of the claim." Appx14. As the Board found, and as both experts recognized, "'in *every embodiment* of the '588 [patent], 'encryption information' is located within the 'requested portion' of the video.'" Appx14 (quoting Appx11328-11329), Appx16-17. The Board further credited DivX's expert testimony that locating the claimed encryption information in this specific location was a "central aspect" of the invention which required a modification to the existing file formats to be implemented. Appx16 (quoting Appx9461-9462, ¶ 90). By contrast, Netflix's expert, despite submitting two expert declarations, declined to submit any testimony concerning the claim construction issue at all.

Netflix's arguments rely heavily upon generic stylistic best practices wherein a modifier should lie in close proximation to the thing being modified. For the first time on appeal, Netflix also invokes a canon of statutory interpretation, the "nearest reasonable referent" (a close cousin of the "last antecedent") in support of its position. But it is unclear how the Board's interpretation violates these principles. Here, as noted, both the second and third clauses modify the first clause. Two objects cannot occupy the same space at the same time and, so too, it is not possible for two trailing modifying clauses to both immediately follow the clause being modified. Nor is there any reason why these stylistic best practices should trump the specification's teachings, the relationship between the words "locating" and "within," and the testimony of the experts.

Netflix's other arguments similarly lack merit. Netflix contends that the Board improperly imported a limitation from the specification, but the Board made clear that "nothing is being imported here" because "we read the claim language itself as specifying that the encryption information be located *within* the requested portions." Appx18. Netflix contends that certain "embodiments" support its interpretation but it only points to silence, *i.e.*, portions of the summary of the invention that do not specify where the encryption information is located. Netflix raises the prosecution history but, as the Board found, it did not do so below. *See* Appx21, n.14; Appx22, n.15. But, even if it were considered, as the Board determined, "the most we can read from the prosecution history, if anything, supports Patent Owner's argument …" Appx22. Netflix further contends that a limitation in a related patent supports its interpretation, but, as both the Board and the dissent recognized, that limitation involves a different type of encryption information, not the one that is the subject of limitation 1(l).

Netflix also contends that the issue before the Court is purely one of law because "the panel majority made no underlying findings of fact to which deference would be owed." Netflix Br., 26. This is not correct. The Board relied on extrinsic evidence and made extensive underlying findings of fact concerning, *inter alia*, the testimony of the experts, the background technology, and stylistic treatises.

## STATEMENT OF THE CASE

This appeal arises from Appellant Netflix's ("Petitioner" or "Netflix") challenge to claims 1-24 of U.S. Patent No. 10,225,588 ("the Patent" or "'588 patent"). Netflix presented a single obviousness ground combining Chen with secondary references Lindahl and Hurst. Appx11020. The Petition relied on a declaration from Dr. Patrick McDaniel.

Post-institution, DivX filed its response ("Response"), supported by Dr. Seth Nielson's expert testimony. Netflix submitted its reply ("Reply"), supported by Dr. McDaniel's second declaration. DivX submitted its sur-reply ("Sur-Reply"). After an oral hearing ("Trial"), the Board issued its original Final Written Decision ("Original-FWD"), finding that Petitioner had failed to show a motivation to combine with a reasonable expectation of success but without making any findings as to DivX's other arguments. Appx3. Netflix appealed and the Federal Circuit reversed the noncombination finding and remanded for further proceedings. *Netflix, Inc. v. DivX, LLC*, 2023 U.S. App. LEXIS 4926, *17 (Fed. Cir., Mar. 1, 2023).

On remand, the Board addressed DivX's second patentability argument, finding that Netflix had failed to show disclosure or obviousness of limitation 1[l]. Netflix on appeal challenges the Board's interpretation of limitation 1[l]. The Board did not reach DivX's other arguments. Appx11296-11297.

# STATEMENT OF THE FACTS

## A. Technological Background.

The ’588 patent provides improved systems and methods for implementing partial frame encryption in the context of adaptive bitrate streaming. To enhance security, streaming may involve encryption. Because encrypting an entire video stream requires a significant expenditure of processing resources, partial encryption methods have been developed that achieve acceptable levels of encryption.

One such method is partial frame encryption, wherein portions of a frame are encrypted. Appx9442-9443, 9456, ¶¶ 51-53 (discussing how fragment level encryption in Netflix’s Chen reference is different from the ’588 patent’s partial frame encryption); *see also* Appx9922 (visual demonstrative for partial frame encryption). Partial frame encryption, however, presents certain challenges. For example, it requires (i) additional encryption information that identifies which portions are encrypted and (ii) a location to store that encryption information so that it may be readily located as necessary. Appx9457-9458, ¶¶ 78-82 (explaining that the standard file format would need to be modified to accommodate these new requirements).

These challenges become more pronounced in an adaptive bitrate streaming system (“ABS,” referred to by Petitioner as “alternative bitrate streaming”). In an

ABS system, media (*e.g.*, video) is encoded in multiple bitrate streams. Appx105, 1:54-58. The receiver switches in real-time between the streams depending on the detected streaming conditions (*e.g.*, bandwidth, processing speed). *Id.*, 1:59-67. Because playing back a stream and switching between streams occur in real time, quickly locating the encryption information that identifies the encrypted portions of frames is critical. Appx9466-9467, ¶¶ 101-102 (explaining the difference between the ’588 patent’s streaming system and the download system in Netflix’s Lindahl reference); *see also* Appx111, 13:11-21.

Addressing this concern, the ’588 patent discloses novel systems and methods for quickly locating partial frame encryption information. Therein, partial frame encryption information is placed (and located) in a specific location within the file. Appx9459-9462, ¶¶ 85-90. Specifically, the partial frame encryption information for a given frame is located within the requested portion of the selected video stream (*i.e.*, the same portion where the frame is located). *Id.* The partial frame encryption information, therefore, may be quickly located. *Id.* This facilitates the real-time streaming demands of ABS systems.

The ’588’s approach, however, undisputably, would not work in the context of conventional file formats that could not place the partial frame encryption information within the requested portions of the selected video stream. Appx9461-9462, ¶ 90; Appx9515, 25:7-18; Appx9524, 34:11-14. Thus, to implement the

invention, the inventors disclosed a "specialized" and "enhance[d]" file format to allow the partial frame encryption information to be located in the requested portion of video. Appx9461-9462, ¶ 90;, Appx109-111, 11:45-50, 9:13-29, 13:51-63; Appx94, Fig. 4e.

The Board credited DivX's expert testimony that locating the claimed encryption information "within the requested portions of selected streams of video" was a "central aspect" of the claimed invention. Appx16 (citing Appx9461-9462, ¶ 90). In accord, every embodiment of the '588 patent locates the claimed encryption information within the requested portion of the selected video stream. Appx14, Appx16; Appx9460, ¶ 88; Appx9537-9539, 9545, 47:2-49:20; 55:5-15 (confirming that in each embodiment, encryption information located within requested portion of stream); Appx106, 109, 111-112, 115, 117, 4:39-58; 9:23-29; 13:57-63; 16:33-49; 22:14-17; 25:10-21 (embodiments locating encryption information within requested portion of video stream).

Implementing these aspects of the invention, the claims require that "each of the alternative streams of protected video includes partially encrypted video frames." Appx118, 27:37-40. The claims further require "locating encryption information that identifies encrypted portions of frames of video within the requested portions of the selected stream of protected video." *Id*., 27:54-57. Thus, the limitation requires "locating" a particular type of encryption information, *i.e.*,

encryption information "that identifies encrypted portions of frames of video," and further requires "locating" that type of "encryption information" "within the requested portions of the selected stream of protected video."

### B. Proceedings Before The Board.

Below, DivX argued that Netflix failed to show: (1) a motivation to combine Chen/Lindahl with a reasonable expectation of success, (2) that limitation 1[l] was satisfied (the subject of this appeal), and (3) that limitation 1[e] was satisfied. Appx11296-11297.

In the Original-FWD, the Board confirmed the claims based on DivX's argument (1), but without deciding arguments (2) and (3). Appx3; Appx11692, 11705. In the prior appeal, this Court reversed the Original-FWD and remanded the case, finding the Board confined Petitioner's combination too narrowly. Appx11781-11782. This Court did not address DivX's arguments (2) and (3). *Id.*; Appx4.

On remand, the Board issued the Second-FWD that is the subject of this appeal. In the Second-FWD, the Board's decision was based on DivX's argument (2) (without addressing arguments (1) and (3)), finding that Netflix failed to show that limitation 1[l] was met.

Limitation 1[l] provides:

> [1] ***locating*** encryption information [2] that identifies encrypted portions of frames of video [3] ***within*** the requested portions of the selected stream of protected video.

Appx118, 27:54-57.

Below, the parties disagreed about the correct interpretation of limitation 1[l]. DivX argued that the second and third clauses modified the first clause, and that every embodiment within the '588 patent located encryption information, that identified encrypted portions of frames of video, "within the requested portions of the selected stream of protected video," supporting its position with the testimony of Dr. Nielson. Appx11327-11335; Appx9458-9464, ¶¶ 83-93. Netflix argued that the third clause only modified the second clause, but did not submit any expert testimony on the claim construction issue. Netflix did not present any argument under the nearest-reasonable-referent (or last antecedent) canon.

The Board found, "having fully considered the parties' arguments and the evidence presented during trial ... that the evidence overwhelmingly supports Patent Owner's reading of limitation [l]—that the encryption information is located within the *requested portions* of the selected stream of protected video." Appx12 (emphasis in original). In reaching its conclusion, the majority analyzed the limitation's plain meaning, explaining the natural relationship between the words "locating" and "within," and further finding that both the second and third clauses modify the first clause. Appx12. The Board further fully considered the stylistic

treatises discussed by the parties and was "not persuaded that either of those guides conclusively establish that there is *only* one proper interpretation of the claim limitation based on rules of English grammar alone." Appx23 (emphasis in original).

Turning to the intrinsic record, the Board found that the specification "only" supports DivX's interpretation, and that "in every embodiment," the claimed encryption information is located within the requested portion of the video stream. Appx14 (citing Appx11328-11329). The Board further concluded that this issue was undisputed between the experts, and that:

> Petitioner's expert, Dr. McDaniel agrees that the embodiments described in the Specification consistently locate the encryption information within the requested portion of the video and that there is no embodiment in the Specification where the encryption information is not within the requested portion of the video.

Appx16-17 (citing Appx9537-9539, 9545, 47:2–49:20; 55:5–15). The Board additionally noted that even though Netflix's expert submitted two declarations, he "did not address the claim construction issue" therein. Appx17, n. 11.

The Board considered the technological background of the invention and found that it too supported DivX's position. The Board credited the unrebutted testimony of DivX's expert that a POSITA would understand that "locating encryption information within the requested portions of the stream is one of the

central aspects of the '588 [patent]'s inventive system." Appx16 (citing Appx9461-9462, ¶ 90). In this regard, the Board found that "the inventors did not simply utilize the industry standard Matroska container file which was not able to contain the necessary encryption information, but, rather, modified the Matroska file format to add this aspect of the invention." Appx16 (citing Appx9461-9462, ¶ 90). The Board found that Dr. Nielson's "credible" testimony "helps explain why every embodiment disclosed in the '588 patent specification describes encryption information located within the requested portion of the video." Appx16 (citing Appx9460, ¶ 88); *see also* Appx9515, 9524, 25:7-18; 34:11-14 (Netflix's expert admitting that Matroska, MP4, and 3GPP standard file formats did not permit inclusion of DRM information within the file).

The Board rejected Netflix's argument that its interpretation imports any limitation from the specification, explaining that "nothing is being imported here" and instead "we read the claim language itself as specifying that the encryption information be located *within* the requested portions." Appx18.

The Board also rejected the arguments that DivX's interpretation is inconsistent with another patent in the same family (U.S. Patent No. 9,621,522), or with the prosecution history of the '588 patent. As to the former, the Board "agree[d] with Patent Owner that Petitioner confuses different aspects of the disclosed invention." Appx20. With respect to the prosecution history, the Board

found that such an argument was never raised by Netflix and was only raised *sua sponte* by the dissenting APJ, and that the arguments were not properly before the Board. Appx21, n.14, Appx22, n.15. Nonetheless, the Board, after analyzing the record, "declined to read" in the prosecution history alleged inconsistencies that did not exist, and held that "the prosecution history, if anything, supports Patent Owner's argument …" because the examiner amended the claim to recite this limitation before allowing it. Appx22.

Having adopted DivX's interpretation of the claims, the Board found that Netflix had not shown disclosure or obviousness of limitation 1[l] and, indeed, Netflix never advanced any unpatentability arguments based on the Board's interpretation of the claim. Appx33-34 (citing Appx11620, 23:6–23, Appx11433-11435); *see also* Appx32 (citing Appx11060-11063). Netflix has appealed the Board's interpretation of limitation 1[l] but not the Board's finding that Netflix failed to show that limitation 1[l] was satisfied under the Board's interpretation.

## SUMMARY OF THE ARGUMENT

The issue on appeal concerns the interpretation of limitation 1[l] and, more specifically, how the three clauses in the limitation modify one another:

> [1] ***locating*** encryption information [2] that identifies encrypted portions of frames of video [3] ***within*** the requested portions of the selected stream of protected video.

The Board's interpretation, that the first clause is modified by both clauses [2] and [3] is supported by the plain meaning, the intrinsic record, including every embodiment of the patent, and the testimony of both experts. The second clause tells us what type of encryption information is being located (encryption information that "identifies encrypted portions of frames of video") and the third clause tells us where that type of encryption information is located ("within the requested portions of the selected stream of protected video"). In this regard, the Board properly noted the natural relationship between the words "locating" and "within." Appx13.

The Board further found that "the evidence ***overwhelmingly*** supports" its interpretation. Appx12 (emphasis added). Considering the specification, the Board concluded that it "only" supports DivX's interpretation. Appx14. The Board credited DivX's expert's testimony that "every embodiment … describes encryption information located within the requested portions of the video." Appx16. On this point, there was no disagreement between the experts as "Petitioner's expert, Dr. McDaniel agrees that the embodiments described in the Specification consistently locate the encryption information within the requested portion of the video *and* that there is no embodiment in the Specification where the encryption information is not within the requested portion of the video." Appx16-17. The Board, moreover, credited Dr. Nielson's testimony that locating

encryption information within the requested portion of the video stream was a "central aspect" of the invention that required an innovative modification of the standard container file format, and it "helps explain why every embodiment disclosed in the '588 patent specification describes encryption information located within the requested portion of the video." Appx16 (citing Appx9460-9462, ¶¶ 88, 90).

Netflix's challenges to the Decision fall flat. With respect to the plain meaning, Netflix relies upon stylistic guides which the Board considered and rejected. On appeal, Netflix for the first time invokes the nearest-reasonable-referent canon (a close cousin of the last antecedent), arguing that under this canon, a modifier "normally" applies only to the nearest-reasonable-referent. Netflix Br., 28. But even if this untimely argument were to be considered, a generic canon of statutory interpretation cannot trump the actual teachings of the patent. The specification is "always highly relevant to the claim construction analysis," "the single best guide to the meaning of a disputed term," and "[u]sually … dispositive." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) (en banc) (citations omitted). By contrast, even in the context of statutory interpretation, the last antecedent canon provides only "marginal assistance." *Res. Conservation Group, LLC v. United States*, 597 F.3d 1238, 1245 (Fed. Cir. 2010). Moreover, under the Board's interpretation, wherein both clauses [2] and [3]

modify clause [1], it is unclear how this canon is violated when two trailing modifiers cannot both be immediately adjacent to the modified clause.

Netflix contends that not all embodiments support the Board's interpretation but points only to silence, *i.e.*, portions of the summary of the invention where the location of the claimed encryption information is not discussed. It never cites any embodiment where the claimed encryption information is not located within the requested portions of video. *Id*. But, "[s]ilence is generally not disclosure." *Novartis Pharms. Corp. v. Accord Healthcare, Inc.*, 38 F.4th 1013, 1017 (Fed. Cir. 2022).

Netflix also argues that the Board's interpretation imports a limitation from the specification. Netflix Br., 39-46. But the Board made clear that "nothing is being imported here" and, "[i]n contrast to importing a limitation that is not expressly recited in the claim, what we address here is how to understand the interaction between words expressly recited in the claim." Appx18.

On appeal, Netflix relies on the prosecution history but, as the Board found, Netflix presented no such argument below. Appx21, n.14. But even if its new argument were considered, as the Board found, "if anything," the prosecution history supports the Board's decision. Appx21-22. Petitioner's reliance on the '522 patent in the same family is also of no avail for, as the Board found, Netflix's argument "confuses" different types of encryption information. Appx20.

For these reasons, this Court should affirm the Second-FWD.

## ARGUMENT

### I. STANDARD OF REVIEW.

The "ultimate interpretation" of a claim is a legal question that is reviewed *de novo*. *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 332 (2015). "When the PTAB looks beyond the patent's intrinsic evidence and consults extrinsic evidence, such as expert testimony, dictionaries, and treatises, those underlying findings amount to factual determinations that we review for substantial evidence." *Knowles Elecs. LLC v. Iancu*, 886 F.3d 1369, 1374 (Fed. Cir. 2018) (cleaned up). A court's subsidiary factual findings based upon expert testimony concerning the intrinsic record is reviewed for clear error. *Teva*, 574 U.S. at 333-334 (2015) (district court's factual findings based on expert testimony concerning specification figure to construe "molecular weight" reviewed for clear error).[2]

[2] Netflix claims that "[t]he panel majority made no underlying findings of fact to which deference would be owed." Netflix Br., 26. This is incorrect. As discussed herein, the Board made numerous factual findings, relying on extrinsic evidence such as expert testimony, the technical background of the invention, stylistic treatises, and more. These findings are reviewed for substantial evidence.

Separately, this Court reviews "the Board's judgments concerning what arguments are fairly presented in a petition and other pleadings for abuse of discretion." *Netflix, Inc. v. DivX, LLC*, 84 F.4th 1371, 1376 (Fed. Cir. 2023) (citation omitted). Additionally, "[a]bsent exceptional circumstances … we generally do not consider arguments that the applicant failed to present to the Board." *In re Baxter Int'l, Inc.*, 678 F.3d 1357, 1362 (Fed. Cir. 2012) (citations omitted).

## II. THE BOARD'S CLAIM INTERPRETATION IS SUPPORTED BY PLAIN MEANING, THE SPECIFICATION, AND UNREBUTTED EXPERT TESTIMONY.

### A. The Plain Meaning Supports The Board's Interpretation.

Limitation 1[l], again, provides:

> [1] ***locating*** encryption information [2] that identifies encrypted portions of frames of video [3] ***within*** the requested portions of the selected stream of protected video.

As the Board found, the first clause is modified by both the second and third clauses. The first clause requires "locating encryption information." The second clause tells us what type of encryption information is being located, *i.e.*, encryption information "that identifies encrypted portions of frames of video." The encryption information being located is, thus, not just any encryption information but, rather, encryption information that identifies which portions of the frames are encrypted. The third clause tells us where that type of encryption information is

"locate[d]," *i.e.*, "within the requested portions of the selected stream of protected video."

As the Board explained:

> We determine Patent Owner's reading of the claim limitation is the better one. The limitation begins with the verb "locating," and it therefore makes sense that the clause would recite what is located (i.e., encryption information) and where it is located (i.e., within the requested portions of the selected stream of protected video). In other words, it is reasonable that the second and third clauses of the limitation *both* modify the first clause ...

Appx13 (emphasis in original).

In this regard, the Board credited Dr. Nielson's testimony concerning how a person of ordinary skill would understand the limitation:

> A POSITA would understand that the first clause of the limitation requires "***locating*** encryption information." The next clause—"***that*** identifies encrypted portions of frames of video"—informs a POSITA regarding the function of the "encrypted information." The last clause—"***within*** the requested portions of the selected stream of protected video"—informs a POSITA where the "***locat[ed]*** encrypted information" is "located." Therefore, a POSITA would interpret the limitation as requiring the "encryption information" to be "located" "within the requested portions of the selected stream of protected video."

Appx9460, ¶ 87 (emphasis in original). As the Board explained, "Dr. Nielson testifies that the second clause of the claim limitation informs the person of ordinary skill in the art of the *function* of the 'encrypted information,' whereas the third clause informs where that encrypted information is located. [Appx9460, ¶ 87]. We determine Patent Owner's reading of the claim limitation is the better one." Appx13 (emphasis in original).

The Board and Dr. Nielson both recognized the natural relationship between the clause "***locating*** encryption information" and the preposition "***within***." When "locating" something, the natural question arises, ***where*** is the thing being located? And that is what the "within" clause provides. And one can easily imagine any number of statements in this vein, wherein the within clause modifies the locating clause, even if separated by one or more intervening modifiers, *e.g.*, "locating the folder that contains the briefs within the file cabinet," "locating a restaurant that serves pizza within the food court," "locating a book that discusses the War of 1812 within the bookstore," etc. A treatise cited by the Board provides an exemplary sentence, "[t]he lawn mower that is broken is in the garage," which could be easily modified to say, "locating the lawn mower that is broken within the garage." *See* Appx23 n.16; *see also* Appx9643, 9651.

This natural relationship between "locating" and "within" is apparent in numerous court decisions. *See, e.g., Tiger Natural Gas, Inc. v. United States*, 61

Fed. Cl. 287, 290 n.4 (2004) ("***locating*** an individual ***within*** the GSBCA's building who would accept the package.") (emphasis added); *Pers. Web Techs., LLC v. Apple, Inc*., 917 F.3d 1376, 1382 (Fed. Cir. 2019 ) ("***locating*** binary objects ***within*** a file") (emphasis added). An intervening modifier that further describes what is being located, again, does not change the natural relationship between "locating" and "within," and these examples could be adjusted as follows:

- [1] ***locating*** an individual [2] that will accept the package [3] ***within*** the GSBCA's building
- [1] ***locating*** binary objects [2] that are desired [3] ***within*** the file

Nor is there anything unusual about a clause with multiple modifiers. Examples abound, *e.g.*, "the boy in the white T-shirt with freckles," "vanilla ice cream with chocolate sprinkles served in a cone." A clause with multiple modifiers is, if anything, even more common in the case of patent claims which are essentially a series of modifiers and sub-modifiers. Patent claims prototypically begin "a system [or method] comprising …" What follows is the body of the claim setting forth a series of elements/steps that modify (or delineate) the system or method claimed and each of those limitations typically contain numerous sub-modifiers. And that is precisely what we have in the limitation-in-question, a discrete element with three clauses, the second and third clauses modifying the first.

For the foregoing reasons, the Board's interpretation of limitation 1[l] is consistent with its plain meaning and common usage.

**B. The Patent's Specification And DivX's Unrebutted Expert Testimony Support The Board's Claim Interpretation.**

In claim construction, claim language is not considered in a vacuum. Here, the '588 patent's specification decisively supports the Board's interpretation. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) (en banc) (the specification is "'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'") (quoting *Vitronics Corp. v. Conceptronic*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).

As the Board found, the specification here "supports *only one* of the two proposed interpretations of the claim." Appx14 (emphasis in original). In support of this conclusion, the Board correctly found that (1) locating the claimed encryption information within the requested portions of video was a "central aspect" of the '588 patent's invention that required modification of the standard container file formats and (2) every embodiment supports the Board's interpretation.

1. Locating The Claimed Encryption Information Within The Requested Portions Of Video Was A "Central Aspect" Of The Invention That Required Modification Of The Standard File Format.

The Board credited DivX's expert's testimony that locating the claimed encryption information "within the requested portions" of video is one of the "central aspects" of the '588 patent's invention that required a modification to the standard Matroska file format "to add this aspect of the invention." Appx16 (citing Appx9461-9462, ¶ 90). The Board further found that Dr. Nielson's testimony in this regard "helps explain why every embodiment … describes encryption information located within the requested portions of the video." Appx16.

The Board's reasonable factual findings in this regard are supported by substantial evidence, including the unrebutted testimony of Dr. Nielson. Relying upon Dr. Nielson's "credible" testimony, the Board found:

> According to Dr. Nielson, a person of ordinary skill in the art would have understood that "locating encryption information within the requested portions of the stream is one of the central aspects of the '588 [patent]'s inventive system." [Appx9461-9462, ¶ 90] (citing Appx110, 11:45–50). Referring to Figure 4e (reproduced above), Dr. Nielson testifies that "the inventors did not simply utilize the industry standard Matroska container file which was not able to contain the necessary encryption information, but, rather, modified the Matroska file format to add this aspect of the invention." *Id.* We find Dr. Nielson's testimony credible and it helps explain why every embodiment

> disclosed in the ’588 patent specification describes encryption information located within the requested portion of the video. *See* [Appx9460, ¶ 88].

Appx16-17.

As Dr. Nielson explained, the ’588 patent “modified the Matroska file format to add this aspect of the invention.” Appx9461-9462, ¶ 90 (*quoting* Appx110, 11:45-50 (“the Matroska container files are specialized Matroska container files that include enhancements …”)); Appx109, 9:13-29 (discussing “specialized Matroska container file”); Appx111, 13:51-63 (similar); Appx105, 2:42-46 (“The DivX Plus file format developed by DivX, LLC … utilizes an extension of the Matroska container format but includes elements that are not specified within the Matroska format.”).

Dr. Nielson further explained this modification of the standard file format by annotating the patent’s Fig. 4e:

> The modified Matroska container file is schematically shown in Patent’s Fig. 4e, reproduced below. As can be seen, the “DRM Info” (*i.e.*, encryption information) highlighted in yellow is located within each BlockGroup (*i.e.*, a “requested portion of the video,” [Appx112] 16:21-52):




FIG. 4e

[Appx94] Fig. 4e.

Appx9461-9462, ¶ 90; *see also* Appx112, 16:33-38 ("The first BlockGroup element 62 includes … a DRMInfo element 65 that identifies a portion of the frame that is encrypted ….").

Dr. Nielson's testimony in this regard was unrebutted. Though Netflix's expert submitted a reply declaration, that declaration did not address (1) how limitation should be interpreted or (2) Dr. Nielson's testimony that locating the claimed encryption information within the requested portion of video was a "central aspect" of the invention that required a modification of the standard file format. *See* Appx17, n. 11 ("As Patent Owner notes, Dr. McDaniel submitted two declarations in this proceeding but did not address the claim construction issue."); *see also* Appx11494-11496.

On appeal, Netflix argues that "Dr. Nielson's assertion that the location of the encryption information is somehow critical to the invention is also inconsistent with DivX's representation in the district court litigation that the inventive aspect of the claim relates to the use of common keys." Netflix Br., 59. But there is no inconsistency. DivX never argued that locating encryption information within the requested portion of video was the ***only*** significant aspect of the invention. Indeed, before the Board, DivX explained why the use of common keys was also critical. *See, e.g.*, Appx11358 (DivX: "the '588 Patent provides detailed analysis and discussion on why its system uses a set of common keys despite its drawbacks") (*citing* Ex. Appx108, 8:55-61; Appx109, 10:27- 31; Appx116, 23:46-51).

The Board's finding that locating encryption information within the requested portions of the video was a central aspect of the invention is, thus, supported by substantial evidence, including the unrebutted testimony of Dr. Nielson. *Acoustic Tech., Inc. v. Itron Networked Sols., Inc.*, 949 F.3d 1366, 1376 (Fed. Cir. 2020) ("expert testimony constituted substantial evidence"); *Koninklijke Philips N.V. v. Google LLC*, 948 F.3d 1330, 1338 (Fed. Cir. 2020) (similar).

2. <u>All Embodiments Support The Board's Interpretation.</u>

The Board's factual finding that locating the claimed encryption information location within the requested portions of video was a "central aspect" of the invention in turn "helps explain" why every embodiment supports the Board's

interpretation. Appx14 ("We find Dr. Nielson's testimony credible and it helps explain why every embodiment disclosed in the '588 patent specification describes encryption information located within the requested portion of the video."). As the Board explained:

> Next, we turn to the Specification, the single best guide to the meaning of a disputed term, *Phillips*, 415 F.3d at 1315, which we determine supports *only one* of the two proposed interpretations of the claim. Patent Owner argues, and we agree, that "in *every embodiment* of the '588 [patent], 'encryption information' is located within the 'requested portion' of the video." [Appx11328-11329 (citing Appx109 (9:23–29), Appx111 (13:57-63), Appx112 (16:33-49), App115 (22:14-17), Appx117 (25:10-21); Appx9460 (¶ 88); Appx9537-9539 (47:2–49:20); Appx9545 (55:5–15)); Appx11494-11495].

Appx14.

In this regard, the Board provided an extensive discussion of the relevant embodiments, explaining how each embodiment locates the claimed encryption information within the requested portion of the video stream. Appx14-16 (quoting and discussing Appx106, 4:41-56, Appx109, 9:23-29, Appx94, Fig. 4e, Appx108, 7:58-62, Appx112, 16:33-52, Appx115, 22:14-17, Appx117, 25:15-21). Moreover, both experts agreed that every embodiment of the '588 patent consistently locates the claimed encryption information within the requested portion of the video. As the Board found:

> Petitioner's expert, Dr. McDaniel agrees that the embodiments described in the Specification consistently locate the encryption information within the requested portion of the video *and* that there is no embodiment in the Specification where the encryption information is not within the requested portion of the video

Appx16-17 (citing Appx9537-9539, 9545, 47:2-49:20; 55:5-15); *see also* Appx9460-9462, ¶¶ 88-90.

The Board and the experts are correct. For instance, in one embodiment, the specification explains that once the requested portion of the video (referred to as a "BlockGroup") is received, it is "parsed" for the "DRMInfo element" that "indicates at least a portion of the protected frames of video that is encrypted." Appx106, 4:39-58; Appx9460-9461, ¶ 89. As the Board found, other embodiments similarly disclose that the encryption information that identifies the encrypted portion of the frames is within the requested portion of the video. Appx15-16 (discussing Appx109, 9:23-29, Appx111, 13:57-63, Appx112, 16:33-49, Appx113, 17:52-55, Appx115, 22:14-17, Appx117, 25:15-21).

***

Thus, as the Board found, locating the claimed encryption information within the requested portions of the video stream was a central aspect of the invention, required a modification of the standard file format, and is supported by every embodiment. The Board's subsidiary factual findings rooted in expert

testimony are not clearly erroneous and, indeed, were not disputed by Netflix's expert. *Teva*, 574 U.S. at 333-334.

## III. NETFLIX'S ARGUMENTS FAIL.

Netflix contends the Board's interpretation is contrary to the plain meaning, not supported by the intrinsic record, and contrary to the claim language in related patents. Netflix's arguments, discussed in turn below, fail.

### A. Netflix Fails To Show That The Board's Interpretation Is Inconsistent With The Plain Meaning.

#### 1. <u>The Board's Interpretation Is Not Contrary To Precepts Of English Grammar.</u>

Netflix argues that the Board's interpretation is "contrary" to "precepts of English grammar," because "[m]odifiers should come, if possible, next to the words they modify." Netflix Br., 28 (*quoting* Strunk & White 30). But, as the Board found, its interpretation does not violate this stylistic best practice. Under the Board's interpretation, ***both*** the second and third clauses modify the first clause. Appx13; *see also* Section II.A, *supra*. Two trailing modifiers cannot both be immediately next to the clause being modified so they are collectively as close as they can be.

And, as the Board further explained, discussing the very same style guide cited by Netflix, the Board's interpretation "does not violate that concept":

> In our Institution Decision, we looked to a treatise on grammar that taught that "[t]he position of words in a sentence is the principle means

> for showing their relationship," and that "[t]he writer must, therefore, bring together the words and groups of words that are related in thought and keep apart those that are not so related." [Appx11244] (citing William Strunk, Jr. & E.B. White, The Elements of Style 36 (4th ed. 2000)). On the full record, however, we determine that Patent Owner's interpretation does not violate that concept since the "within" clause of limitation [1] follows the "locating encryption information" clause and they are only spaced apart by another description of the encryption information (i.e., "that identifies encrypted portions of frames of video").

Appx23. In this regard, the Board credited Dr. Nielson's testimony "that the second clause of the claim limitation informs the person of ordinary skill in the art of the *function* of the 'encrypted information,' whereas the third clause informs where that encrypted information is located." Appx13 (citing Appx9460, ¶ 87).

Nor would the limitation be clearer if the order of the second and third clause were switched:

> [1] ***Locating encryption information*** [3] ***within*** the requested portions of the selected stream of protected video [2] that identifies encrypted portions of frames of video.

As the Board further found, its interpretation is consistent with the examples given in two stylistic guides. Appx23-24 (discussing William Strunk, J. & E.B. White, *The Elements of Style* (4th ed.) and Bryan Garner, *The Redbook, A Manual*

*on Legal Style*). As the Board explained, DivX cited portions of these treatises that supported the Board's ultimate interpretation including:

"the lawn mower that is broken is in the garage"

(Appx23, Appx23, n.16) which, again, can be easily revised to parallel the limitation-at-hand:

"locating the lawn mower that is broken within the garage."

In both instances, notwithstanding the intervening modifier "that is broken," the lawn mower is in the garage. Based on the "complete record," including the specification and the testimony of the experts, the Board was "not persuaded that either of those guides conclusively establish that there is *only* one proper interpretation of the claim limitations based on rules of English grammar alone." Appx23 (emphasis in original).

For the first time on appeal, Netflix contends the Board's interpretation is contrary to the nearest-reasonable-referent canon (Netflix Br., 28-29), a close cousin to the "last antecedent" canon. *Scalia & Garner, Reading Law: The Interpretation of Legal Texts* 152 (2012). Netflix argues that under this canon, a modifier "normally" applies only to the nearest reasonable referent. Netflix Br., 28. Netflix did not invoke this canon before the Board and does not attempt to demonstrate an "exceptional circumstance" that should allow it to be raised on appeal. *Baxter*, 678 F.3d at 1362 ("Absent exceptional circumstances … we

generally do not consider arguments that the applicant failed to present to the Board.") (citations omitted).

But even if it were considered, it would be unavailing. For starters, just like the grammatical best practices just discussed, the nearest-reasonable-referent/last antecedent canons do not apply here. "[T]he last antecedent rule is used when there are a series of items, which are then followed by a single modifying clause" and "[t]he rule helps determine whether that trailing modifying clause modifies all of the preceding items or only the last one." *D.A.N. Joint Venture Iii v. Hofmeister*, 2011 Mich. App. LEXIS 2061, at *13 (Ct. App. Mich. Nov. 22, 2011). Here, however, the limitation presents the reverse, a clause followed by two modifiers.

The nearest-reasonable-referent and the last antecedent are, moreover, statutory interpretation canons and, weak ones at that, which yield to context and common sense. *Lockhart v. United States*, 577 U.S. 347, 352 (2016) ("Of course, as with any cannon of statutory interpretation, the rule of the last antecedent 'is not an absolute and can assuredly be overcome by other indicia of meaning.'") (quoting *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003)); *Heyman v. Cooper*, 31 F.4th 1315, 1321 (Fed. Cir. 2022) (last antecedent canon is "uniquely defeasible by context").

Even when construing statutes, appellate courts have rightly criticized the blinkered application of the last antecedent/nearest-reasonable-referent canon. As Justice Alito explained:

> Appellate judges spend virtually every working hour speaking, listening to, reading, or writing English prose. Statutes are written in English prose, and interpretation is not a technical exercise to be carried out by mechanically applying a set of arcane rules. Canons of interpretation can help in figuring out the meaning of troublesome statutory language, but if they are treated like rigid rules, they can lead us astray. When this Court describes canons as rules or quotes canons while omitting their caveats and limitations, we only encourage the lower courts to relegate statutory interpretation to a series of if-then computations. No reasonable reader interprets texts that way.

*Facebook, Inc. v. Duguid*, 592 U.S. 395, 413 (2021) (J. Alito, concurring), *see also, id.*, 404, n.5 (majority agreeing that "Linguistic canons are tools of statutory interpretation whose usefulness depends on the particular statutory text and context at issue."). And, as Professor Joseph Kimble has observed when considering the phrase "men and women who are tall":

> A court that resolved this ambiguity by applying the doctrine (or rule, or canon) of the last antecedent would be a court that's at a loss. And a court that uses it to support a decision made for other reasons is throwing in a feather. Even worse is deploying it to counter or trump sensible opposing arguments. The doctrine has little weight or value

> (except as an expedient), and judges should treat it with skepticism — if they mention it at all.

Joseph Kimble, *The Doctrine of the Last Antecedent, the Example in Barnhart, Why Both Are Weak, and How Textualism Postures*, 16 Scribes J. Legal Writing 5 (2014-15); *see also* Terri LeClerq, *Doctrine of the Last Antecedent: The Mystifying Morass of Ambiguous Modifiers*, 2 Legal Writing: J. Legal Writing Inst. 81, 86 (1996) ("English does not have a set of rules that eliminates ambiguity" and "no English language rule resolves the ambiguity that a modifier creates when it has more than one antecedent."), *id.*, 89 ("rather than becoming 'one more aid' in interpretation … the Doctrine of the Last Antecedent has … created as much confusion and disagreement as the ambiguous modifier its drafter set out to clarify.").

In accord, as this Court has explained, the "last antecedent" doctrine "provides only marginal assistance":

> This convoluted argument makes no sense and is based entirely on the theory of the last antecedent ... But we have made clear that that doctrine provides only marginal assistance, and is overcome by other factors showing a different meaning.

*Res. Conservation Group, LLC v. United States*, 597 F.3d 1238, 1245 (Fed. Cir. 2010) (citations omitted); *Merck & Co. v. United States*, 499 F.3d 1348, 1354 (Fed. Cir. 2007) ("we do not agree that the last antecedent rule resolves the issue.");

*Demko v. United States*, 216 F.3d 1049, 1053 (Fed. Cir. 2000) (rejecting application of last antecedent); *United States v. American Trading Co.*, 17 C.C.P.A. 368, 370 (CCPA 1930) ("Accepting th[e] [last antecedent] as a proper rule to be applied, it must be remembered that the limiting words, 'where no contrary intention appears,' constitute a material part of it."); *E.I Du Pont de Nemours & Co. v. Green*, 411 A.2d 953, 956 (Del. Sup. Ct. 1980) ("we think the Court below has given undue weight to the 'last antecedent' rule and to niceties of punctuation and sentence structure ...").

And these cautionary statements should resonate with anyone with a basic familiarity with English usage who can readily imagine statements where the last antecedent/nearest-reasonable-referent canon, and stylistic best practices would apply, wouldn't apply, and others where the understanding might be ambiguous. For instance, suppose a father tells his son, "you may have an apple or ice cream if you eat your broccoli." Here, you might imagine that the son may have an apple regardless of whether the broccoli is eaten. By contrast, if the father said, "you may have cake or ice cream if you eat your broccoli," we can all discern that eating cake is conditioned upon eating broccoli even though this statement and the preceding one are grammatically identical. Similarly, most seeing a sign stating "boys and girls who are at least four feet tall may ride the roller coaster," would understand the height requirement to apply to both sexes. By contrast, "adults and

children with a permission slip may go on the trip," would understand that only children need a permission slip. Other statements, *e.g.*, "seminars and clinical classes with fewer than 14 students will not be subject to the grading curve," might be more ambiguous.

Recently, Justice Kagan provided a rhetorical example where the last antecedent clearly would not apply:

> Consider the following, grammatically identical construction: "The woman dressed to the nines carrying an umbrella, as shown in the picture . . ." Would anyone think that "as shown in the picture" referred to anything less than the well-attired and rain-ready *woman*? No. And so too here, the modifier goes back to the beginning of the preceding clause.

*Cyan, Inc. v. Beaver Cty. Emples. Ret. Fund*, 583 U.S. 416, 439-440 (2018).

Thus, the last antecedent and nearest-reasonable-referent are somewhat weak canons of statutory interpretation that may be overcome by context, common sense, and other indicia of meaning. And, as this Court has explained, applying the last antecedent to interpreting, *e.g.*, a prior art reference is not the same thing as statutory interpretation:

> Of course, Anhydrides and the other cases discussed above apply the rules of English grammar to statutory construction, whereas the present dispute involves the meaning of a prior art reference. These exercises are not entirely coterminous because the meaning of a prior art

> reference requires analysis of the understanding of an artisan of ordinary skill. ... In contrast, statutory construction does not include a skilled artisan component but considers instead the "object and policy of the law." [*United States. Nat'l Bank v. Independent Ins. Agents of Am.*, 508 U.S. 439, 455 (1993)].

*Finisar Corp. v. DirecTV Group, Inc.*, 523 F.3d 1323, 1336 (Fed. Cir. 2008).

This Court should be even more reticent to rely heavily upon such canons of statutory interpretation in the context of claim construction. In claim construction, "the plain meaning is not the meaning of the term in the abstract." *Sci. Applications Int'l Corp. v. United States*, 154 Fed. Cl. 594, 623 (2021). Instead, it is the meaning in the context of the patent's specification. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005). In this regard, the specification—not writing style suggestions—is, again, the "single best guide" for claim construction and "usually dispositive." *Id.*, 1315. Thus, grammatical best practices in claim interpretation must yield to the context of the specification in which they appear. *Quality Edge, Inc. v. Rollex Corp.*, 709 Fed. Appx. 1000, 1006 (Fed. Cir. 2017) (rooting construction in specification and rejecting construction based upon absence of comma where there was "no hard and fast grammatical rule").

While Netflix cites two district court cases for the proposition that the last antecedent basis rule can be applied to claim construction (Netflix Br., 30), many others have applied the canons cautiously and rightly found them to be subservient

to the north star of claim construction, *i.e.*, the plain and ordinary meaning of the limitation as understood by an ordinarily skilled artisan in view of the intrinsic record.[3] *See, e.g.*, *Shire Dev. LLC v. Teva Pharms. USA, Inc.*, 2019 U.S. Dist. LEXIS 31753, *8, 2019 WL 969638 (D. Del. Feb. 28, 2019) ("District courts have only rarely invoked the last antecedent doctrine during claim construction."); *see also id.* at *9, ("the claim construction inquiry, as described in *Markman* and *Philips*, is not hamstrung by the rigidities of English grammar. A court is to consider the claims, the specification, and the prosecution history to give the claims meaning."); *Gamesa Eolica, S.A. v. GE*, 359 F. Supp. 2d 790, 801 (W.D. Wis. 2005) (last antecedent is "not an absolute," finding contrary meaning based on the specification); *St. Jude Med. v. Volcano Corp.*, Civil Action No. 12-441-

---

[3] The two Federal Circuit cases cited by Netflix are inapposite. In *Finisar* (cited at Netflix Br., 30), this Court used grammar to interpret a disclosure in a book. *Finisar Corp. v. DirecTV Group, Inc.*, 523 F.3d 1323, 1335 (Fed. Cir. 2008). But even there, the court "consult[ed] the overall context of the passage" as "one of skill would interpret it" in reaching its conclusion. *Id.*, 1336-1337. In *Uniloc 2017 LLC v. Facebook, Inc.*, No. 2019-2159, 2021 WL 5370480 (Fed. Cir. Nov. 18, 2021) (cited by Netflix Br., 30), the Court used the grammatical rule to interpret the petition. *Id.*, *24-25.

RGA, 2013 U.S. Dist. LEXIS 75814 at *4 n.3 (D. Del. May 30, 2013) (declining to apply last antecedent in claim construction).

This makes good sense as POSITAs are unlikely to resort to style guides, much less canons of statutory interpretation, in trying to understand the meaning of a patent limitation. As one judge observed:

> We read claims in light of the understanding of a POSA. In more than fifty patent trials, I have never heard that a POSA had any particular ability in English grammar. I expect that, on average, POSAs are less likely than lawyers and judges to concern themselves with the technicalities of grammar.

*Shire*, 2019 U.S. Dist. LEXIS 31753, *9 n.2. Therefore, the nearest-reasonable-referent/last antecedent canons, even if they were to be considered and were applicable, should not disturb the Board's interpretation which is well rooted in the actual limitation (recognizing the relationship between "locating" and "within"), supported by every embodiment in the specification, and consistent with a "central aspect" of the invention that required a modification of the standard file format to implement.

Separately, Netflix also criticizes the Board's use of commas to more clearly explain its understanding of the limitation. Netflix Br., 32. In explaining its decision, the Board noted that its understanding of the limitation could "perhaps" also be expressed by the use of commas:

> In other words, it is reasonable that the second and third clauses of the limitation *both* modify the first clause (for example, as could perhaps be expressed through the use of commas as "locating encryption information, that identifies encrypted portions of frames of video, within the requested portions of the selected stream of protected video").

Appx13 (emphasis in original). The Board made clear that it introduced commas only "to illustrate" its understanding, and it "recognize[d] that the use of commas to set off phrases in claim drafting is not consistent." *Id*. n.10.

Netflix argues that the Board's alternative illustration of its interpretation of the limitation by adding commas means that the Board's interpretation is not "supported by the plain language" and "is not the limitation's natural reading." Netflix Br., 32. But Netflix's rationale does not follow. Any claim limitation could, with the benefit of hindsight, be written more clearly, including through the addition of commas, after a specific dispute comes up. That does not mean that plain meaning does not support the Board's construction. Furthermore, both the Federal Circuit and the U.S. Supreme Court have rejected Netflix's singular focus on punctuation. *United States Nat'l Bank v. Independent Ins. Agents of Am*., 508 U.S. 439, 454 (1993) ("a purported plain-meaning analysis based only on punctuation is necessarily incomplete and runs the risk of distorting a statute's true meaning."); *Finisar Corp. v. DirecTV Group, Inc*., 523 F.3d 1323, 1336 (Fed. Cir.

2008) ("the doctrine of the last antecedent and its corollary, the rule of punctuation are more guidelines than absolute rules") (internal citation omitted).

Netflix also argues that the Board's addition of commas to the clause to alternatively illustrate its understanding does not follow "normal usage" of commas. Netflix Br., 32. Even if true, this is irrelevant. The Board's illustrative use of commas has no bearing on its reasoning or conclusion. In fact, if Netflix's allegation is correct, it suggests the meaning of the limitation is clearer as is, without the illustrative addition of commas.

Netflix finally argues that the Board's interpretation of the claim requires modifying the claim language to add the phrase "and is," "locating encryption information that identifies encrypted portions of frames of video ***and is*** within the requested portions of the selected stream of protected video." Netflix Br., 33-34. But as explained, the Board's plain meaning interpretation is apparent without the addition of any words, as shown by numerous comparable examples. The Board itself specifically rejected the notion that its interpretation of the limitation required the insertion of the word "is":

> Although we agree with Petitioner that the insertion of the verb "is" makes the meaning clearer, we are persuaded that when read in the light of the Specification, the meaning of the limitation as drafted is discernible to one of ordinary skill in the art.

Appx19, n. 13. The Board further made clear that "nothing is being imported" into the limitation and that, instead, "we read the claim language itself as specifying that the encryption information to be located *within* the requested portions," and that "[i]n contrast to importing a limitation that is not expressly recited in the claim, what we address here is how to understand the interaction between words expressly recited in the claim." Appx18 (citations omitted).

In the same vein, Netflix similarly criticizes certain examples presented by DivX before the Board as requiring the word "is." Netflix Br., 33. But those are examples where the word "is" is useful in a particular sentence. For example, the word "is" is quite suitable in the sentence "the meeting that starts at 10 a.m. is about the Matthews case." Netflix Br., 33. But, one could easily modify the sentence to say, "let's locate the meeting that starts at 10 a.m. about the Matthews case." Similarly, "the lawn mower that is broken is in the garage" could, again, be rewritten to say "locating the lawn mower that is broken within the garage."

Fundamentally, it is difficult to conceive of ***any*** claim construction dispute that could not be definitively resolved, *ex post facto*, through clearer language and/or punctuation. That Netflix could posit some revised version of the limitation that would even more clearly support the Board's interpretation is irrelevant.

### 2. The Board's Interpretation Is Consistent With The Language Of Claim 1 As A Whole.

Netflix next argues, for the first time on appeal, that the Board's interpretation is "refuted by the context of claim 1 as a whole." Netflix Br., 35. Netflix further contends that its interpretation of limitation 1[l] is correct because "the location of the 'encrypted information' is irrelevant within the context of claim 1" and "[t]he operation of claim 1 is unaffected by whether the encryption information is inside or outside of the requested portions of the selected stream." Netflix Br., 35.

But even if this new attorney argument were to be considered, Netflix's analysis misses the mark. As discussed in Section II.B, locating the claimed encryption information within the requested portions of the stream is one of the "central aspects" of the '588 patent's inventive system that required a modified version of the standard file format. Appx16 (*quoting* Appx9461-9462, ¶ 90). It is only natural that claim 1 captures this "central aspect" of the invention.

Netflix also argues that "within the requested portions of the selected stream of protected video" only modifies its preceding "frames of video" because the claimed "encryption information" cannot be for any frames of video; rather, it must be for the "frames of video" that are "within the requested portions of the selected stream of protected video" so that the "requested portions" can subsequently be decrypted and played back. Netflix Br., 37. But again, it is only fitting that the

claims should be interpreted consistent with a "central aspect of the invention," particularly when each of the embodiments place the encryption information within the requested portions of the selected video stream. *See* Section II.B., *supra*. Further, under the Board's interpretation, the encryption information being located is encryption information that identifies the encrypted portions of the frame within the requested portion of the selected video stream. This interpretation would naturally cover locating encryption information that identifies what portions of the frames are encrypted for the frames that are within the requested portion of the selected video stream.

For the foregoing reasons, the Board's interpretation is consistent with, and supported by, the context of claim 1.

### B. Netflix's Arguments Based On The Intrinsic Record Fail.

Netflix challenges the Board's interpretation arguing that (1) the Board's finding that all embodiments support the Board's interpretation is incorrect, (2) the Board's interpretation improperly imports a limitation from the specification, and (3) the Board's interpretation is inconsistent with the prosecution history. Netflix's arguments fail.

#### 1. Netflix's Attorney Argument That Not All Embodiments Of The Patent Support The Board's Interpretation Fails.

As discussed in Section II.B.2, the Board found that in every embodiment, the claimed encryption information is located within the requested portion of the

video. *See also* Appx14 (citations omitted). This finding, again, is amply supported by the intrinsic record and confirmed by the testimony of both experts. *See* Section II.B.2, *supra*. Indeed, before the Board, Netflix did not point to any embodiment that supported its position and its expert testified that "there is not an explicit embodiment" that supports Netflix's position. Appx9545, 55:5-15. In fact, Netflix's expert confirmed one-by-one that every embodiment supported DivX's position. Appx9537-9539, 47:2-49:20. Across two declarations, he did not opine otherwise. Appx17 n.11.

On appeal, Netflix presents new attorney argument, arguing for the first time that "the first two embodiments disclosed in the specification ***are silent*** about whether the encryption information is 'within the requested portions of the selected stream of protected video' or not." Netflix Br., 48 (emphasis added). In other words, Netflix points to a portion of the specification that does not discuss where the encryption information in question is located. But, "[s]ilence is generally not disclosure." *Novartis Pharms. Corp. v. Accord Healthcare, Inc.*, 38 F.4th 1013, 1017 (Fed. Cir. 2022). Nor could silence in one portion of the specification obviate the '588's actual teachings on where the claimed encryption information is located. Netflix's argument to the contrary is akin to disregarding the cooking instructions on the back of a frozen pizza box because the front of the box does not also include instructions.

As the Board put it:

> Petitioner also argues that although embodiments disclosed in the ’588 patent specification support Patent Owner’s more restrictive construction, the same embodiments also support Petitioner’s proposed construction. [Appx11433]; [Appx11818-11820]. That argument misses the point. In resolving the dispute between the parties, ***we need to look to where the Specification discloses the encryption information is located***. ***There is no support in the Specification for locating encryption information anywhere other than within the requested portions and Petitioner has not pointed us to any portion of the Specification that supports Petitioner’s construction***.

Appx17-18 (emphasis added).

Nor is it surprising that the location of the claimed encryption information is not revealed in the portions of the specification Netflix relies upon. Netflix points to the ’588 patent’s summary of the invention, not its embodiments. Netflix Br., 48 (citing Appx106, 3:13-30, Appx107, 5:4-23, Appx108, 7:8-25); *see also* Appx105, 2:63 (section title “summary of the invention”). It is hardly surprising that a particular aspect of an embodiment may not be presented in the summary of the invention. Furthermore, even if there were embodiments that did not specify the location of the claimed encryption information, that would not help Netflix. This is because everywhere in the patent where a location ***is*** disclosed, the claimed encryption information ***is*** located within the requested portions of the video.

Netflix's attorney arguments are, thus, untimely, contrary to the '588's actual teachings, the expert testimony of record, and this Court's caselaw. Netflix has not established that the Board's finding, supported by the testimony of both experts, on how a POSITA would interpret the embodiments is "clearly erroneous." *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 335 (2014) ("how a skilled artisan would understand" an embodiment based on expert testimony was underlying "factual finding" that should be affirmed unless "clearly erroneous").

Relatedly, Netflix argues that its expert's deposition testimony supports Netflix's position because when he testified that there is no "explicit" embodiment that supports Netflix's position, he meant to testify that the summary of the first two embodiments support Netflix's position. Netflix Br., 50. But Netflix's expert said no such thing. Appx9537-9539, 9545, 47:2-49:20, 55:5-15. He even submitted a reply declaration after his deposition and did not address the claim construction issue. Appx17, n.11. As the Board found, "Petitioner's expert, Dr. McDaniel agrees that the embodiments described in the Specification consistently locate the encryption information within the requested portion of the video *and* that there is no embodiment in the Specification where the encryption information is not within the requested portion of the video." Appx16-17 (citing Appx9537-

9539, 9545, 47:2-49:20, 55:5-15). The Board's consideration of this extrinsic evidence is supported by substantial evidence.

Netflix also cites (for the first time on appeal) its expert's deposition testimony that a POSITA would know that it "would be possible to put" the claimed encryption information anywhere. Netflix Br., 43, 49, 51. But whether it would be "possible" to place the claimed encryption information anywhere does not suggest there is any disclosure to this affect or change the fact that all embodiments of the patent place it within the requested portions of video. Furthermore, Petitioner's expert did not present any support for this conclusion. *TQ Delta, LLC v. Cisco Sys.*, 942 F.3d 1352, 1358 (Fed. Cir. 2019) ("Conclusory expert testimony does not qualify as substantial evidence."); 37 C.F.R. § 42.65 ("Expert testimony that does not disclose the underlying facts or data on which the opinion is based is entitled to little or no weight.").

Netflix cites APJ Turner's dissenting opinion for the proposition that "other portions of the Specification" support Netflix's interpretation. Netflix Br., 47 (citing Appx41-42). The only portion of the '588 patent that APJ Turner cited in his opinion in support was 24:63-25:2 (Appx116-117). Appx41-42. But as the Board found, and APJ Turner acknowledged, that portion of the '588 patent does not speak to the issue. Appx17, 42. Instead, it discloses that information within the top-level index file would allow the user "to request byte ranges from the

server" corresponding to a portion of the container index. Appx116-117, 24:63-25:2. As the unrebutted testimony of DivX's expert explained, this portion relates to identifying which portions of the video to request for viewing, but "does not relate to the location of encryption information that identifies which portions of the frames within those requested byte ranges are encrypted." Appx9462-9463, ¶ 91. "[O]nce the selected portions of video are actually received by the client, the encryption information is located within those selected portions." *Id.* Thus, as the Board correctly found, this disclosure has no bearing on the interpretation of limitation 1[l] or the location of the type of encryption information that is the subject of limitation 1[l]. Appx17; *see also* Appx42 (dissenting APJ admitting that "Patent Owner is correct with respect to the distinction it raises ….").

Netflix also cites (for the first time on appeal) the '588 patent's statement that "many embodiments of the invention utilize a conventional Matroska container," and argues that because the conventional Matroska container could not store the DRM Information within the file, there must be embodiments where the claimed encryption information is not stored within the requested portions of the video. Netflix Br., 43. Netflix misapprehends this portion of the patent, which relates to the option of making modifications "to include information concerning the size of each of the cluster elements," not to the placement of the claimed encryption information. Appx114, 20:27-35. In that context, the patent explains

that a system may use the modified element that includes information concerning the size of each cluster element, or may use the conventional Matroska elements that omits such information.[4]

Netflix also argues that "the specification contemplates that the encryption information need not be stored in the Matroska file at all, and could instead be stored in another file used within the same system, for example, in the top-level index file." Netflix Br., 43-44 (citing Netflix's discussion of the related '522 patent). As explained in Section III.C, *infra*, this argument fails. As the Board found, Netflix misapprehends the claims of the '522 patent. Appx20.

Netflix also relies (for the first time) on Appx109, 9:18-32, arguing that it "suggest[s] flexibility in the location of the encryption information beyond the one mechanism relied on by the panel majority, where the DRMInfo element is stored in the BlockGroup element." Netflix Br., 49. But that section only states that "any of a variety of mechanisms can be utilized to store DRM information within a

---

[4] A conventional Matroska container may also be used in full encryption systems. Unlike partial frame encryption systems, full encryption systems encrypt the entirety of frames. Because there would not be any "encryption information that identifies the encrypted portions of frames" that would need to be included in the container file, they can use conventional containers.

Matroska container in accordance with embodiments of the invention." Appx109, 9:29-32. It has no bearing upon ***where*** the encryption information is stored.

2. The Board's Interpretation Does Not Import A Limitation From The Embodiments.

Netflix further attacks the Board's construction for allegedly importing a limitation from the embodiments. Netflix Br., 39-46. But the Board made clear that "nothing is being imported here" and instead:

> we read the claim language itself as specifying that the encryption information be located *within* the requested portions. In contrast to importing a limitation that is not expressly recited in the claim, what we address here is how to understand the interaction between words expressly recited in the claim. … And the Specification is the single best guide to the meaning of a disputed term and is usually dispositive.

Appx18 (citations omitted); *see also id.*, n.12 ("The dissent also makes a similar argument, that examples from the Specification may not be used to import a limitation into the claims … We could not agree more. But importing a limitation requires that the limitation is not recited in the claims.").

As the Board observed, the claims expressly recite "locating encryption information … within the requested portions of the selected stream of protected video." No single word or concept is imported. Instead, the Board has relied on the specification to confirm its understanding of how the clauses actually in the limitation relate to one another. In accord, the Federal Circuit routinely looks to

the specification to determine how to interpret recited terms, rejecting the argument that such an analysis constitutes importing a limitation from the specification. *See, e.g., Enzo Biochem, Inc. v. Applera Corp.*, 780 F.3d 1149, 1156 (Fed. Cir. 2015) (rejecting allegation of importation, explaining "[h]ere, we are using the specification to more fully understand what the patentee claimed"); *Flex-Rest, LLC v. Steelcase, Inc.*, 455 F.3d 1351, 1361 (Fed. Cir. 2006) ("Such a requirement does not improperly read a limitation from the specification into the claim. Rather, the written description and the drawings make clear" what the claim term means); *Ultimate Pointer, L.L.C. v. Nintendo Co.*, 816 F.3d 816, 823 (Fed. Cir. 2016) (similar); *Kyocera Wireless Corp. v. Int'l Trade Comm'n*, 545 F.3d 1340, 1349 (Fed. Cir. 2008) (similar); *Chamberlain Group, Inc. v. Lear Corp.*, 516 F.3d 1331, 1337 (Fed. Cir. 2008) (similar).

By contrast, Netflix's cited authorities are readily distinguishable. Netflix cites *Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1302 (Fed. Cir. 2007) (Netflix Br., 45), but, the Board specifically distinguished *Verizon*:

> [I]mporting a limitation requires that the limitation is not recited in the claims. For example, in *Verizon*, the rejected claim construction sought to construe the term "translation" as requiring "a change in protocol from a higher-level to a lower-level protocol," whereas there was no indication in the claims that translation meant a change in protocol, let alone a change from a higher-level to a lower-level protocol. *Verizon*,

> 503 F.3d at 1303. The claim construction issue presented here is entirely different.

Appx18 n.12. Thus, in *Verizon*, construing “translation” to mean “a change in protocol from a higher-level to a lower-level protocol” is clearly importing words into the claim. Here, by contrast, the entire dispute turns on how the three clauses in the limitation relate to one another. Again, no word is added.

Netflix’s other citations (Netflix Br., 44) similarly involved constructions where words were added to the limitation. *Innova/Pure Water, Inc. v. Safari Water Filtration Sys*., 381 F.3d 1111, 1119 (Fed. Cir. 2004) (rejecting construction of “operatively connected” to mean “affixed ... by some tenacious means of physical engagement that results in a unitary structure” because “operatively connected” does not require a “unitary structure”); *Hill-Rom Servs. v. Stryker Corp*., 755 F.3d 1367, 1371 (Fed. Cir. 2014) (rejecting construction of “data link” to mean a “wired” datalink).

Netflix also claims that “the Board expressly recognized that while ‘embodiments disclosed in the Specification of the ’588 Patent support Patent Owner’s more restrictive construction, the same embodiments also support Netflix’s construction.” Netflix Br., 47 (citing Appx11244). But, in support, Netflix does not cite the Board’s FWD, but the Institution Decision. *Id*. But the

Institution Decision—which was written by dissenting APJ Turner[5]—is "only preliminary," *UUSI, LLC v. United States*, 131 Fed. Cl. 244, 265 (2017), and "the Board is not bound by any findings made in its Institution Decision," "is free to change its view of the merits after [that] further development of the record, and *should do so* if convinced its initial inclinations were wrong." *TriVascular, Inc. v. Samuels*, 812 F.3d 1056, 1068 (Fed. Cir. 2016); *In re Magnum Oil Tools Int'l, Ltd.*, 829 F.3d 1364, 1377 (Fed. Cir. 2016) ("the Board has an obligation to assess the question anew after trial based on the totality of the record"). After reviewing the complete record, including the testimony of the experts, the embodiments of the patent, the background of the invention, and more, the Board no longer held the view ascribed to it by Netflix.

For the foregoing reasons, the Board's interpretation of the plainly recited words of the claim does not import any limitation from the specification.

---

[5] Netflix makes much of the fact that the Board in the Institution Decision and the Original-FWD expressed skepticism towards DivX's interpretation. Both of these decisions, however, were written by APJ Turner who wrote the dissent in the Second-FWD.

3. The Board's Claim Interpretation Is Consistent With The '588 Patent's Prosecution History.

Netflix further argues that the "'588 patent's prosecution history confirms the panel majority's error." Netflix Br., 58. But as the Board found, Netflix never raised this argument before the Board. It was instead raised by the dissenting APJ. As the Board found:

> As a threshold matter, [the dissent's prosecution history analysis] raises new arguments and evidence not contemplated by the parties in any argument presented to us, and therefore, fails to comport with the APA's notice requirements. *See Magnum Oil*, 829 F.3d at 1381 ("[T]he Board must base its decision on arguments that were advanced by a party, and to which the opposing party was given a chance to respond.").

Appx21, n.14; *see also Microsoft Corp. v. Biscotti, Inc.*, 878 F.3d 1052, 1075 (Fed. Cir. 2017) ("any argument not raised before the Board is waived on appeal").

On appeal, Netflix does not seriously argue why the Board's finding that the argument was not presented was an abuse of discretion. Netflix asserts, in a footnote, that "DivX itself had relied on the prosecution history." Netflix Br., 60 n.10. Even if that were relevant, Netflix only points to DivX's reliance on unrelated portions of prosecution history for issues that have nothing to do with this claim construction. *Id*. (citing Appx11321 (DivX cited an IDS in its preliminary response to show that Netflix's primary reference (Chen) was

considered by the examiner), Appx11187 (Netflix's preliminary reply to the discretionary denial argument under § 325(d)), Appx11632 (DivX's counsel at oral argument stated general proposition that plain meaning is considered in light of specification and prosecution history, without citing any portion of prosecution history), Appx11634 (similar)).

But even if this new argument were considered, it also fails on the merits. Netflix does not point to anything in the prosecution history that refutes the Board's interpretation. Instead, it argues that the Board's factual finding that locating encryption information within the requested portions of the stream was a central aspect of the patent's inventive system is not correct because the original claims in the application did not recite "within the requested portions of the selected stream of protected video." Netflix Br., 58. That the original claims did not recite a specific limitation is not indicative of anything, nor does it negate the Board finding that every embodiment supports the Board's decision.

Netflix further observes that parts of this limitation were added by the Examiner to place the claims in "condition for allowance." Netflix Br., 59. Specifically, the original claim recited that the encryption information is located "within the selected stream," but the Examiner required an amendment that the encryption information is located "within the requested portions of the selected stream of protected video." But, as the Board observed, this says nothing about the

claim construction dispute and, "if anything," confirms that locating encryption information inside the stream was significant to allowance. Appx21-22. As the Board found, even the original claims required the claimed encryption information to be "within" (not outside) of the selected stream, and the examiner required them to be "within the requested portions" of the selected stream "to overcome various rejections and objections." Appx21.

Given the lack of any clear statement or intent to the contrary, Netflix's argument that the prosecution history refutes the Board's interpretation is incorrect—especially in light of the unambiguous specification. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005) ("because the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes."); *Inverness Med. Switz. GmbH v. Warner Lambert Co.*, 309 F.3d 1373, 1380-82 (Fed. Cir. 2002) (prosecution history's ambiguity made it less relevant to claim construction); *Athletic Alternatives, Inc. v. Prince Mfg., Inc.*, 73 F.3d 1573, 1580 (Fed. Cir. 1996) (similar).

For the foregoing reasons, the Board's interpretation is consistent with and supported by the '588 prosecution history.

### C. The Board's Claim Interpretation Is Fully Consistent With The Claim Language Of Related Patents.

Netflix further argues that the '522 and other related patents support Netflix's claim interpretation. Netflix is incorrect.

Netflix argues that claim 1 of the'522 patent recites that certain "DRM information" is located in the top-level index, which is separate from the requested portions of video. Netflix Br., 52-53. From that, Netflix concludes that not all embodiments of the specification include "encryption information that identifies the encrypted portions of frames of video" within the requested portion of the video. Netflix Br., 51. But, as the Board found, Netflix's argument "confuses" the DRM information that claim 1 of the '522 patent requires to be in the top-level index file, with the different type of encryption information that claim 1 of the '588 patent requires to be within the requested portions of the video. Appx20.

As relevant here, the specification discloses two types of DRM information. "DRM," of course, is just an acronym for "Digital Rights Management" and does not, in and of itself, refer to any specific type of encryption information. Appx105, 2:47-50. A first type of DRM information, relevant for claim 1 of the '522 patent, is a set of common keys, where different portions of the alternate streams may be encrypted by different keys from the set. Appx75, Abstract ("a top level index file identifying a plurality of alternative streams of protected content, where each of the alternative streams of protected content are encrypted using common cryptographic

information”). Thus, for example, a set of three keys may be used and rotated, *e.g.*, every five minutes within each of the streams, such that the same set of three keys is used to encrypt the entirety of all alternative streams in five-minute increments. Through this method, security is increased because different individual keys are used to encrypt different portions of the streams, but the playback device’s decryption engine does not need to be reinitialized when switching streams because the same set of keys is used for all streams. Appx108, 8:55-61; Appx111, 13:11-21.

Reflecting the above, claim 1 of the ’522 patent recites that the top-level index file contains “[1] a set of DRM information that identifies protected portions of the alternative streams of protected video and [2] frame keys to utilize in accessing the protected portions of the alternative streams.” Appx6328, 27:38-41. Thus, the top-level index file in claim 1 of the ’522 patent, for example, informs the device what key is used for which portion of the video stream.

But that DRM information does not inform the user which portions of a frame of video are encrypted when partial frame encryption is used. That is addressed by a different type of encryption information disclosed in the specification, which is the type claimed in both claim 1 of the ’588 patent and claim 14 of the’522 patent.

As explained above (*supra* p. 28), the specification explains that, where partial frame encryption is used, the video stream elements contain DRMInfo elements that identify the encrypted portions of video frames. Appx106, 4:39-58. When the user requests portions of video, the playback device "[obtains] a BlockGroup containing a protected frame of video [and] parse[s] the BlockGroup element to obtain a DRMInfo element indicating at least a portion of the protected frame of video that is encrypted using an encryption key from the set of encryption keys ...." *Id.* This is the type of "encryption information" claimed by claim 1 of the '588 patent, which requires encryption information "that identifies the encrypted portions of frames of video" to be located "within the requested portions of the selected stream of protected video."

That the DRM information of claim 1 of the '522 is not the same type of encryption information in limitation 1[l] of the '588 patent is also readily confirmed by a comparison of claims 1 and 14 of the '522 patent:

| ’588 Patent | ’522 Patent |
|---|---|
| **Claim 1 (Appx118)** | **Claim 1 (Appx6328)** |
| “locating ***encryption information that identifies encrypted portions of frames of video*** within the requested portions of the selected stream of protected video …” | “… wherein the top-level index file comprises … a set of ***DRM information that identifies protected portions of the alternative streams*** of protected video ….” |
| | **Claim 14 (Appx6329)** |
| | “obtain a BlockGroup containing an encrypted frame of video; … parse the BlockGroup element to obtain a ***DRMinfo element indicating at least a portion of the encrypted frame of video that is encrypted*** …” |

As can be seen above, whereas claim 1 of the ’588 patent concerns “encryption information that identifies encrypted portions of frames of video,” claim 1 of the ’522 patent concerns “DRM information that identifies protected portions of the alternative streams of protected video ...” These are not the same types of encryption information. And that is further confirmed by claim 14 of the ’522 patent which, similar to claim 1 of the ’588, refers to “a DRMinfo element indicating at least a portion of the encrypted frame of video that is encrypted.” If such information were contemplated by the “DRM information” of claim 1, it would not be restated in such entirely different terms in claim 14.

Netflix on appeal insists that the “[t]he panel majority erred in treating the ‘DRM information’ inconsistently with respect to the ’522 and ’588 patent.” Netflix Br., 56. Netflix appears to suggest that the Board treated the (1) DRM

information in claim 1 of the ’522 patent, (2) the DRMInfo element in the Matroska container file disclosed in the embodiments, and (3) the encryption information recited in claim 1 of the ’588 patent, to all refer to the same thing. Netflix Br., 43 (arguing that the Board “viewed the ‘DRM information’ and ‘DRMInfo element’ as ‘encryption information.’”) Netflix is mistaken.

The Board explained that DRMInfo is an element in the file structure within the BlockGroup (the requested portion of the video) that contains encryption information that identifies the encrypted portions of frames of video, as recited in claim 1 of the ’588 patent. Appx14-16. The Board never equated that with the general term “DRM information,” or with DRM information that identifies the encrypted portions of streams, as recited in claim 1 of the ’522 patent. In fact, the Board expressly rejected Netflix’s contention that the DRM information recited in claim 1 of the ’522 patent is the same encryption information recited in claim 1 of the ’588 patent. Appx20. Thus, the ’522 patent is fully consistent with the Board’s interpretation of claim 1 of the ’588 patent. *See also* Appx11496-11501.

Netflix also recycles another failed argument with respect to other related patents. It argues that in other patents in the “family,” certain claims require DRM information to be located within the “container file.” Netflix Br., 57. Based on that, Netflix then argues that because “DivX knew how to draft claims specifying where the encryption information was stored … but omitted any such limitation

from the '588 patent claims[,]" "[i]t would be improper to now import such a limitation under the guise of claim construction." Netflix Br., 57-58. As the Board correctly found, Netflix's premise is incorrect. "[N]othing is being imported" in the Board's interpretation of the claim. Appx18. The claims ***do*** include the express limitation that the encryption information be located "within the requested portions of the selected stream of video." *See* Section III.B.2.

To the extent Netflix argues that the claims could have been written more clearly to address the specific claim construction dispute here, its criticism is misplaced. Netflix cites no authority for its proposition that the mere fact that claims could have, *ex post facto*, after a claim construction dispute has arisen, been drafted more clearly means that the Board's construction is incorrect. If applicants could perfectly predict, *ex ante*, every claim construction dispute that might arise, it is difficult to conceive of a dispute that could not be addressed through clearer drafting, *e.g.*, by reciting the construction verbatim. By contrast, a prototypical claim construction is a limitation that, on its face, is susceptible to more than one interpretation. In such instances, any ambiguity in the claim language is best resolved, first and foremost, by reference to the specification. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315-16 (Fed. Cir. 2005) (en banc). As the Board found, supported by the unrebutted testimony of DivX's expert, "when read in light of the

specification, the meaning of the limitation as drafted is discernable to one of ordinary skill in the art." Appx19 n.13.

## CONCLUSION

For the foregoing reasons, the Decision should be affirmed.

Date: September 13, 2024

Respectfully submitted,

*/s/ Nathan Nobu Lowenstein*
Nathan Nobu Lowenstein
Kenneth Weatherwax
Parham Hendifar
LOWENSTEIN & WEATHERWAX LLP
1016 Pico Blvd.
Santa Monica, California 90405
Telephone: (310) 307-4500
Facsimile: (310) 307-4509

*Counsel for Patent Owner-Appellee DivX LLC*

**CERTIFICATE OF SERVICE**

I certify that counsel for the parties have been served with a true and correct copy of the foregoing document via the Court's CM/ECF system on September 13, 2024.

Date: September 13, 2024

*/s/ Nathan Nobu Lowenstein*
Nathan Nobu Lowenstein

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a) or Federal Rule of Federal Circuit Rule 28.1. This brief contains 13,696 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) or Federal Rule of Federal Circuit Rule 28.1 and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). This brief has been prepared in a proportionally spaced typeface using Microsoft Word in a 14-point Times New Roman font.

Date: September 13, 2024

*<u>/s/ Parham Hendifar</u>*

Nathan Nobu Lowenstein
Kenneth Weatherwax
Parham Hendifar
LOWENSTEIN & WEATHERWAX LLP
1016 Pico Blvd
Santa Monica, California 90405
Telephone: (310) 307-4500
Facsimile: (310) 307-4509

*Counsel for Patent Owner-Appellee DivX LLC*