No. 2024-1541

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

NETFLIX, INC.,

*Appellant*,

*v.*

DIVX, LLC,

*Appellee.*

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2020-00558

## REPLY BRIEF FOR APPELLANT NETFLIX, INC.

MARK C. FLEMING
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000
Mark.Fleming@wilmerhale.com

NORA N. XU
WILMER CUTLER PICKERING
HALE AND DORR LLP
2100 Pennsylvania Avenue, N.W.
Washington, DC 20037
(202) 663-6000

LAUREN E. MATLOCK-COLANGELO
WILMER CUTLER PICKERING
HALE AND DORR LLP
7 World Trade Center,
250 Greenwich Street
New York, NY 10007
(212) 230-8800

*Attorneys for Appellant Netflix, Inc.*

November 1, 2024

## CERTIFICATE OF INTEREST

Counsel for Appellant Netflix, Inc. certifies the following:

**1. Represented Entities**. Fed. Cir. R. 47.4(a)(1). Provide the full names of all entities represented by undersigned counsel in this case.

Netflix, Inc.

**2. Real Party in Interest**. Fed. Cir. R. 47.4(a)(2). Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.

None.

**3. Parent Corporations and Stockholders**. Fed. Cir. R. 47.4(a)(3). Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.

None.

**4. Legal Representatives**. List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP: Harper Batts, Jeffrey Liang, Chris Ponder

**5. Related Cases**. Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

[X] Yes (file separate notice; see below) [ ] No [ ] N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). Please do not duplicate information. This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

Already filed.

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

None.

Dated: November 1, 2024

/s/ Mark C. Fleming

MARK C. FLEMING
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTEREST ..... i

TABLE OF AUTHORITIES ..... v

INTRODUCTION ..... 1

ARGUMENT ..... 2

THE PANEL MAJORITY MISCONSTRUED LIMITATION [*l*] ..... 2

A. The Panel Majority's Construction Is Contrary To The Claim's Ordinary And Customary Meaning ..... 2

1. The panel majority's construction departs from the ordinary rules of English grammar ..... 2

a. The Court should reject DivX's invitation to ignore the ordinary rules of English grammar ..... 3

b. DivX's arguments about the nearest-reasonable-referent canon and last antecedent rule fail ..... 5

2. DivX's examples are inapposite ..... 9

3. The panel majority's construction of limitation [*l*] is inconsistent with the context of claim 1 as a whole ..... 11

B. DivX's Specification-Based Arguments Do Not Justify The Panel Majority's Interpretation ..... 14

1. The placement of encryption information is not a "central aspect" of the claims ..... 14

2. The panel majority erred by confining limitation [*l*] based on select embodiments ..... 21

3. DivX's other arguments fail....................................................25

C. The Panel Majority's Construction Is Inconsistent With The '588 Patent's Related Patents....................................................27

D. Although Not Necessary, Netflix's Expert's Testimony Also Refutes The Panel Majority's Construction ...............................30

CONCLUSION....................................................................................................32

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Acoustic Technology, Inc. v. Itron Networked Solutions, Inc.*,
949 F.3d 1366 (Fed. Cir. 2020) ....................20

*American International Group v. Bank of America Corp.*,
712 F.3d 775 (2d Cir. 2013) ....................3

*Anhydrides & Chemicals, Inc. v. United States*,
130 F.3d 1481 (Fed. Cir. 1997) ....................8

*Applications in Internet Time, LLC v. Salesforce, Inc.*,
No. 24-1133, 2024 WL 4456271 (Fed. Cir. Oct. 10, 2024)
(nonprecedential) .................... 17-18, 24

*Athletic Alternatives, Inc. v. Prince Manufacturing, Inc.*,
73 F.3d 1573 (Fed. Cir. 1996) ....................19

*Aventis Pharma S.A. v. Hospira, Inc.*,
675 F.3d 1324 (Fed. Cir. 2012) ....................21

*BASF Agro B.V. v. Makhteshim Agan of North America, Inc.*,
519 F. App'x 1008 (Fed. Cir. 2013) (nonprecedential)....................20

*Carrum Technologies, LLC v. Unified Patents, LLC*,
No. 2020-2204, 2021 WL 3574209 (Fed. Cir. Aug. 13, 2021)
(nonprecedential) ....................7

*Chamberlain Group, Inc. v. Lear Corp.*,
516 F.3d 1331 (Fed. Cir. 2008) ....................26

*Chef America, Inc. v. Lamb-Weston, Inc.*,
358 F.3d 1371 (Fed. Cir. 2004) ....................5

*Cipla Ltd. v. Amgen Inc.*,
386 F. Supp. 3d 386 (D. Del. 2019)....................8

*Continental Circuits LLC v. Intel Corp.*,
915 F.3d 788 (Fed. Cir. 2019) ....................24

*Credle v. Bond*,
25 F.3d 1566 (Fed. Cir. 1994) ....................................................................3

*CUPP Computing AS v. Trend Micro Inc.*,
53 F.4th 1376 (Fed. Cir. 2022) ....................................................................9

*Decisioning.com, Inc. v. Federated Department Stores, Inc.*,
527 F.3d 1300 (Fed. Cir. 2008) ....................................................................8

*Enzo Biochem, Inc. v. Applera Corp.*,
780 F.3d 1149 (Fed. Cir. 2015) ....................................................................25

*Finisar Corp. v. DirecTV Group, Inc.*,
523 F.3d 1323 (Fed. Cir. 2008) ....................................................................3

*Flex-Rest, LLC v. Steelcase, Inc.*,
455 F.3d 1351 (Fed. Cir. 2006) ....................................................................25

*HBAC Matchmaker Media, Inc. v. Google Inc.*,
650 F. App'x 990 (Fed. Cir. 2016) (nonprecedential)........................................23

*Hill-Rom Services, Inc. v. Stryker Corp.*,
755 F.3d 1367 (Fed. Cir. 2014) ..................................................................14, 22

*In re Hyatt*,
708 F.2d 712 (Fed. Cir. 1983) ....................................................................3

*Intertainer, Inc. v. Hulu, LLC*,
660 F. App'x 943 (Fed. Cir. 2016) (nonprecedential)........................................12

*Inverness Medical Switzerland GmbH v. Warner Lambert Co.*,
309 F.3d 1373 (Fed. Cir. 2002) ..................................................................18, 19

*Koninklijke Philips N.V. v. Google LLC*,
948 F.3d 1330 (Fed. Cir. 2020) ....................................................................20

*Koninklijke Philips N.V. v. Quectel Wireless Solutions Co.*,
No. 2023-1221, 2024 WL 3042238 (Fed. Cir. June 18, 2024)
(nonprecedential) ....................................................................................8

*Kyocera Wireless Corp. v. International Trade Commission*,
545 F.3d 1340 (Fed. Cir. 2008) ....................................................................26

*Littelfuse, Inc. v. Mersen USA EP Corp.*,
29 F.4th 1376 (Fed. Cir. 2022) ....................................................................30

*Lockhart v. United States*,
577 U.S. 347 (2016)..........................................................................................6

*Lowe v. ShieldMark, Inc.*,
No. 2021-2164, 2022 WL 636100 (Fed. Cir. Mar. 4, 2024) ..............................23

*Nestle's Food Co. v. United States*,
16 Ct. Cust. 451 (Ct. Cust. App. 1929) ..............................................................6

*Novartis Pharmaceuticals Corp. v. Accord Healthcare, Inc.*,
38 F.4th 1013 (Fed. Cir. 2022) ........................................................................22

*Paroline v. United States*,
572 U.S. 434 (2014)...................................................................................... 5-6

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) .......................................................................19

*Pulse Electronics, Inc. v. U.D. Electronic Corp.*,
860 F. App'x 735 (Fed. Cir. 2021) (nonprecedential).......................................27

*Resource Conservation Group, LLC v. United States*,
597 F.3d 1238 (Fed. Cir. 2010) .........................................................................7

*Richardson v. United States*,
110 F.4th 1375 (Fed. Cir. 2024) ....................................................................6, 8

*Sage Products Inc. v. Devon Industries, Inc.*,
126 F.3d 1420 (Fed. Cir. 1997) .........................................................................9

*Seabed Geosolutions (US) Inc. v. Magseis FF LLC*,
8 F.4th 1285 (Fed. Cir. 2021) ..........................................................................18

*SIMO Holdings Inc. v. Hong Kong Cloudlink Network Technology Ltd.*,
983 F.3d 1367 (Fed. Cir. 2021) .........................................................................4

*SSI Technologies, LLC v. Dongguan Zhengyang Electronic Mechanical Ltd.*,
59 F.4th 1328 (Fed. Cir. 2023) ........................................................................23

*SuperGuide Corp. v. DirecTV Enterprises, Inc.*,
358 F.3d 870 (Fed. Cir. 2004) ....................................................................4, 26

*Teva Pharmaceuticals USA, Inc. v. Sandoz, Inc.*,
574 U.S. 318 (2015)........................................................................... 7-8, 15

*TriVascular, Inc. v. Samuels*,
812 F.3d 1056 (Fed. Cir. 2016) .......................................................................27

*Ultimate Pointer, L.L.C. v. Nintendo Co.*,
816 F.3d 816 (Fed. Cir. 2016) .........................................................................25

*UUSI, LLC v. United States*,
131 Fed. Cl. 244 (2017)....................................................................................27

*Vasudevan Software, Inc. v. MicroStrategy, Inc.*,
782 F.3d 671 (Fed. Cir. 2015) ...........................................................................4

*Vitronics Corp. v. Conceptronic, Inc.*,
90 F.3d 1576 (Fed. Cir. 1996) .........................................................................20

*Wasica Finance GmbH v. Continental Automotive Systems, Inc.*,
853 F.3d 1272 (Fed. Cir. 2017) .......................................................................28

*WesternGeco LLC v. ION Geophysical Corp.*,
889 F.3d 1308 (Fed. Cir. 2018) .........................................................................7

## STATUTES

35 U.S.C. § 316(d) ...............................................................................................8

## OTHER AUTHORITIES

Chicago Manual of Style (16th ed. 2010).............................................................2

Scalia, Antonin & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* (2012) ..................................................................................4, 6, 8

Strunk, Jr., William & E.B. White, *The Elements of Style* (4th ed. 2000) .........................................................................................................2

## INTRODUCTION

Netflix demonstrated critical legal errors in the panel majority's construction of limitation [*l*]. In response, DivX manufactures forfeiture where there is none and asks this Court to ignore ordinary English grammar and well-established canons of construction. DivX also offers strained examples that demonstrate only that there are situations where ***context*** can indicate that the interpretive canons may not apply. But DivX identifies no contextual clues within limitation [*l*], or claim 1 as a whole, that compel disregard of those established principles of interpretation.

DivX also repeats the Board's error by seeking to confine limitation [*l*] to select embodiments. DivX's argument is not only contrary to this Court's case law, but also ignores other embodiments that are agnostic as to the placement of the claimed "encryption information." Nor can the phrase "within the requested portions of the selected stream" be considered a "central aspect of the invention" as DivX insists—not least because it was not in the original claims.

Indeed, DivX's interpretation would mean that limitation [*l*] covers a system where the "encryption information" is within the requested portions of the selected stream, but the "encrypted portions of frames of video" that the encryption information identifies are ***not*** within the requested portions of the selected stream. This result is inconsistent with claim 1 as a whole, which requires "decrypting" and then "playing back the decrypted frames of video obtained from the requested

portions of the selected stream." Appx118(27:58-63). Netflix's construction, by contrast, makes perfect sense: encryption information, wherever it is, identifies encrypted portions of video frames within the requested portions of the selected stream, as it is those portions that, once identified and decrypted, are played back for the viewer's enjoyment.

The Court should correct the Board's construction, hold that Lindahl discloses limitation [*l*], and remand for further proceedings.

## ARGUMENT

### THE PANEL MAJORITY MISCONSTRUED LIMITATION [*l*]

#### A. The Panel Majority's Construction Is Contrary To The Claim's Ordinary And Customary Meaning

##### 1. The panel majority's construction departs from the ordinary rules of English grammar

As Netflix demonstrated (Br. 27-34), ordinary grammar rules show that limitation [*l*] requires only that the "encrypted portions of frames of video" be "within the requested portions of the selected stream." A prepositional phrase like the "within" phrase "should be as close as possible to the word it modifies." Chicago Manual of Style § 5.175, p. 248 (16th ed. 2010); *see also* Strunk, Jr., William & E.B. White, *The Elements of Style* 28, 30 (4th ed. 2000). The Board relied on this principle in originally and correctly determining that "the

grammatically correct construction" has the "within" phrase modifying only the nearest phrase, i.e., the "encrypted portions of frames of video." Appx11244.

The absence of a comma between the "within" phrase and the "encrypted portions of frames of video" phrase further indicates that the "within" phrase only modifies that immediately-preceding noun phrase. *See Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323, 1336 (Fed. Cir. 2008); *American Int'l Grp. v. Bank of Am. Corp.*, 712 F.3d 775, 781-782 (2d Cir. 2013) ("When there is no comma," the modifier "is ordinarily understood to apply only to its last antecedent.").

DivX does not deny these principles. Instead, DivX attempts to undermine the importance of grammar and syntax in claim construction. DivX's arguments fail.

#### *a. The Court should reject DivX's invitation to ignore the ordinary rules of English grammar*

DivX remarkably argues that skilled artisans have no "particular ability in English grammar" and that grammatical rules are merely "generic stylistic best practices" or "stylistic guides." Br. 3, 15, 29, 39. This Court has said the contrary. *See In re Hyatt*, 708 F.2d 712, 714 (Fed. Cir. 1983) ("[A] claim must be read in accordance with the precepts of English grammar."); *Credle v. Bond*, 25 F.3d 1566, 1572 (Fed. Cir. 1994) (a construction "at war with its grammar and syntax" constitutes "an unreasonable interpretation"). This Court and others have thus regularly relied on "grammatical principle[s]" to construe claims. *See, e.g.*,

*SuperGuide Corp. v. DirecTV Enters., Inc.*, 358 F.3d 870, 886 (Fed. Cir. 2004); *see also SIMO Holdings Inc. v. Hong Kong Cloudlink Network Tech. Ltd*., 983 F.3d 1367, 1376 (Fed. Cir. 2021); *Vasudevan Software, Inc. v. MicroStrategy, Inc*., 782 F.3d 671, 680 (Fed. Cir. 2015) (citing Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* 119 (2012) for principles of "proper grammar"); Appx11244 (Strunk & White is "[a] common treatise on grammar").[1]

DivX tries to escape the normal rules of English grammar by asserting that—had the patentee wished to draft a claim reflecting DivX's desired meaning—there was no way to place both the second and third clauses of limitation [*l*] "immediately adjacent" to "encryption information." Br. 3, 16, 29. That is plainly wrong. DivX's desired meaning could have been easily accomplished by placing each modifier on either side of "encryption information," one before and one after:

> locating ***within the requested portions of the selected stream of protected video*** encryption information that identifies encrypted portions of frames of video.[2]

---

[1] Contrary to DivX's assertion (Br. 4, 17 n.2), resort to grammar in claim construction does not raise "factual" issues "reviewed for substantial evidence." Rather, where the claim construction inquiry is based on applying "grammatical principle[s]," "the issue is resolved based on only intrinsic evidence, not on factual bases such as extra-patent usage of technical terms." *SIMO*, 983 F.3d at 1374, 1377.

[2] All emphasis added unless otherwise indicated.

The patentee could also have done as DivX does in its brief (Br. 7-8) and described the claimed "encryption information that identifies encrypted portions of frames of video" as "partial frame encryption information," and then written limitation [*l*] as:

> locating ***partial frame*** encryption information within the requested portions of the selected stream of protected video.

DivX also suggested the following revision, which would clearly produce its desired meaning:

> locating encryption information that identifies encrypted portions of frames of video ***and is*** within the requested portions of the selected stream of protected video (Appx11333-11344).

There are thus numerous ways the patentee could have drafted limitation [*l*] to accomplish the meaning DivX now advances. But it did not do so. Instead, DivX and the panel majority rewrote the claim language to produce a meaning at odds with the ordinary understanding of the claim as drafted. *See, e.g.*, *Chef Am., Inc. v. Lamb-Weston, Inc.*, 358 F.3d 1371, 1373-1374 (Fed. Cir. 2004) ("we construe the claim as written, not as the patentees wish they had written it").

#### *b. DivX's arguments about the nearest-reasonable-referent canon and last antecedent rule fail*

DivX takes issue with the nearest-reasonable-referent canon and the related last antecedent rule. Br. 31-36. But these canons are merely applications of a grammatical rule that reflects how English is normally read: a modifying phrase attaches to the terms that are nearest. *See Paroline v. United States*, 572 U.S. 434,

446-447 (2014) (last antecedent canon involves a "grammatical rule"); *Richardson v. United States*, 110 F.4th 1375, 1381 (Fed. Cir. 2024) (same). The nearest-reasonable-referent canon provides that "a preposition … modifier" "normally applies only to the nearest reasonable referent." Scalia & Garner 152. The last antecedent canon similarly provides that, absent contrary "indicia of meaning," "a limiting clause or phrase … should ordinarily be read as modifying only the noun or phrase that it immediately follows." *Lockhart v. United States*, 577 U.S. 347, 351-352 (2016) (quotation marks omitted). Applying those established canons, the "within" phrase modifies only the phrase it immediately follows, i.e., "encrypted portions of frames of video."

DivX's waiver argument (Br. 3, 31) lacks merit. The Board's Institution Decision expressly applied the grammatical rule that a modifying phrase attaches to the terms that are nearest, citing Strunk & White. Appx11244. DivX recognized the issue and argued against applying the "'general rule that a dependent or modifying clause relates to and modifies its ***nearest antecedent***.'" Appx11335 (quoting *Nestle's Food Co. v. United States*, 16 Ct. Cust. 451, 455 (Ct. Cust. App. 1929)); *see also* Appx9899-9900; Appx11638. And Netflix's reply and oral presentation urged rejection of DivX's arguments for the reasons stated in the Institution Decision, which adopted "***the more grammatically correct construction***." Appx11433-11436 (quoting Appx11244); *see also*

Appx11615(18:3-5); Appx11619-11620(22:19-23:5). The issue is plainly preserved. *See WesternGeco LLC v. ION Geophysical Corp.*, 889 F.3d 1308, 1320 n.6 (Fed. Cir. 2018) (no waiver where the Board considered the argument); *Carrum Techs., LLC v. Unified Patents, LLC*, No. 2020-2204, 2021 WL 3574209, at *5 (Fed. Cir. Aug. 13, 2021) (no waiver where opposing party "availed itself of the opportunity to respond to those arguments").

On the merits, DivX asserts that canons of construction may be overcome by context. Br. 15, 32, 34. But that only begs the question: what context here supposedly overcomes the canons' ordinary application? Certainly nothing like the situation this Court faced in *Resource Conservation Group, LLC v. United States*, 597 F.3d 1238, 1245 (Fed. Cir. 2010), where the proposed statutory construction made "no sense" in context. Rather, the context of limitation [*l*] confirms that claim 1 makes ***more*** sense when it is the "encrypted portions of frames of video" that are specified to be "within the requested portions of the selected stream," whereas the placement of the encryption information is a matter of indifference. *See infra* pp. 11-14; Opening Br. 35-39.

DivX next takes an even more extreme position, arguing that the canons of construction should not be used in construing patent claims at all. *See* Br. 36-39. But "construing a patent claim" involves "much the same task as … construing other written instruments, such as deeds, contracts, or tariffs." *Teva Pharms. USA,*

*Inc. v. Sandoz, Inc.*, 574 U.S. 318, 325 (2015). These canons are regularly employed to give contracts and tariffs their plain and ordinary meaning. *E.g.*, *Richardson*, 110 F.4th at 1381; *Anhydrides & Chems., Inc. v. United States*, 130 F.3d 1481, 1483 (Fed. Cir. 1997); *Cipla Ltd. v. Amgen Inc*., 386 F. Supp. 3d 386, 400 (D. Del. 2019) (Stark, J.). Further, this Court has previously, and indeed recently, applied the nearest-reasonable-referent canon to determine "the unambiguous ordinary meaning" of a claim limitation. *E.g.*, *Koninklijke Philips N.V. v. Quectel Wireless Sols. Co*., No. 2023-1221, 2024 WL 3042238, at *3 (Fed. Cir. June 18, 2024) (citing Scalia & Garner 152); *Decisioning.com, Inc. v. Federated Dep't Stores, Inc*., 527 F.3d 1300, 1314 (Fed. Cir. 2008) ("plain language of the claims requires ***only***" the immediately-preceding noun phrase, as opposed to a more distant preceding noun phrase, "be necessarily" modified by a "modifying phrase").

Finally, DivX asserts that "[a]ny claim limitation could, with the benefit of hindsight, be written more clearly." Br. 40. But the claim's ordinary meaning ***is*** clear, and it matches Netflix's reading. During prosecution, DivX had the opportunity to, but did not, draft the claim to reflect the different meaning it now desires, years later after Netflix has identified invalidating prior art. DivX could also have moved to amend the '588 patent during the IPR, but did not. *See* 35 U.S.C. § 316(d). DivX cannot now change the scope of its issued claim through a

construction that is inconsistent with the claim's ordinary and customary meaning. *See CUPP Computing AS v. Trend Micro Inc.*, 53 F.4th 1376, 1383-1384 (Fed. Cir. 2022) (allowing patentees to "shapeshift their claims through argument in an IPR" would nullify the IPR claim amendment process). Rather, "the public at large," including Netflix, is entitled to rely on the claim language as drafted and read in light of ordinary English usage. *See, e.g., Sage Prods. Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1425 (Fed. Cir. 1997).

### 2. DivX's examples are inapposite

Rather than applying proper English grammar and syntax to determine the claim language's plain and ordinary meaning, DivX contrives examples in which context shows that a "within" prepositional phrase can modify a more distant clause. Each example only reinforces its differences from limitation [*l*].

In many of DivX's examples, the meaning is driven by context, namely a typical locational relationship between the noun that follows "locating" and the noun following the "within" phrase. Specifically, a "file cabinet" typically contains file folders; a "food court" typically contains restaurants; a "bookstore" typically contains books (not "the War of 1812"); and a "package" is typically "accept[ed]" by an individual (not by a "building"). Br. 20-21. Accordingly, DivX's strained examples show that context will prevail over canons where the earlier noun that follows "locating" (i.e., file folder, restaurant, book, individual) is

clearly more likely to be "within" the identified location (i.e., file cabinet, food court, bookstore, building) than the noun that immediately precedes the "within" clause (i.e., briefs, pizza, War of 1812, package). *Id.*

But in limitation [*l*], there is no such typical relationship between the noun that follows "locating" and the noun following the "within" phrase. Nothing suggests that "the requested portions of the selected stream of protected video" typically contain "encryption information," rather than the (immediately preceding) "encrypted portions of frames of video." (To the contrary, the patent's broader context supports Netflix's interpretation. *See infra* pp. 11-14.) There is thus no context suggesting a typical relationship between the noun being located (i.e., "encryption information") and the "within" phrase (i.e., "within the requested portions of the selected [video] stream") that overrides application of ordinary canons.

Nor is there any purported "natural relationship" between the words "locating" and "within" (Br. 20-21) that would justify DivX's reading here. There is nothing unnatural about "locating" an object without specifying where the object is, while instead using "within" to specify the location of another noun. For instance, "locating a diagram that identifies the water pump within the car engine" clearly conveys that the water pump—not the diagram—is in the car engine. Similarly, "locating a textbook that identifies organs within the human body"

specifies where the organs are, but not where the textbook is—and certainly does not suggest that the textbook is within the human body.

DivX's other examples are likewise inapposite, because they place the "within" phrase after a phrase that does not contain a noun at all:

- "locating the lawn mower that is broken within the garage"
- "[1] locating binary objects [2] that are desired [3] within the file"

Br. 21, 31. In these examples, the context shows that the "within" phrase must modify the noun phrase earlier in the sentence ("lawn mower" and "binary objects"), because ***there is no alternative noun phrase available***. Here, by contrast, there is another noun phrase available—the (immediately preceding) noun phrase "encrypted portions of frames of video."

### 3. The panel majority's construction of limitation [*l*] is inconsistent with the context of claim 1 as a whole

Limitation [*l*]'s context within claim 1 confirms that the "within" phrase expresses the locational relationship between the relevant "encrypted portions of frames of video" and "the requested portions of the selected stream." Opening Br. 35-39. The patent describes a system containing a multitude of "encrypted portions of frames of video"; depending on which portions of the "selected stream" are requested, some encrypted portions will be within the "requested portions of the selected stream" and some will not. *See* Appx118(27:30-63); *see also* Appx106(3:13-30); Appx107(5:4-23); Appx108(7:8-25). The encryption

information must accordingly identify the specific "encrypted portions of frames of video" that are "within the requested portions of the selected stream," so that the system knows which encrypted portions to decrypt.

DivX tries to avoid the claim's broader context by again incorrectly asserting waiver. Br. 43. But Netflix argued to the Board, as here, that limitation [*l*] reflects the "need to identify the encrypted portions of frames of video within the requested portions of the selected stream in order to know what portions to decrypt." Appx11614-11615(17:22-18:2). Netflix thus "took the same position[s] [before the Board] that it raises on appeal." *Intertainer, Inc. v. Hulu, LLC*, 660 F. App'x 943, 947-948 (Fed. Cir. 2016).

Importantly, DivX's construction allows for an illogical result that the patent nowhere supports. DivX's interpretation of limitation [*l*] would cover a scenario where the system "identifies encrypted portions of frames of video" outside, but ***not*** inside, the "requested portions of the selected stream of protected video." (DivX makes this clear by arguing that "the second and third clauses modify the first clause," and not arguing that the third clause modifies the second clause. Br. 3, 10, 21.) DivX's interpretation thus means that the "encryption information" could "identif[y]" those "encrypted portions of frames of video" that are ***outside*** "the requested portions of selected [video] stream" without identifying those that are ***within*** "the requested portions of the selected [video] stream."

The import of DivX's construction is inconsistent with the entire focus of claim 1, which is to ensure that the device can "play[] protected content from a plurality of alternative streams," by first "selecting a stream … of protected video" and "requesting portions of the selected stream" based on byte ranges "for portions of the selected stream." Appx118(27:30-63). The ultimate goal of claim 1 is to "play[] back the decrypted frames of video ***obtained from the requested portions*** of the selected stream of protected video." Appx118(27:61-63). The purpose of limitation [*l*] is to ensure that the device locates the "encryption information" needed to "decrypt[]" and "play[] back" the "encrypted portions of frames of video" that are "within the requested portions of the selected stream." Appx118(27:54-63). If, as DivX's construction allows, the device did not identify "encrypted portions of frames of video" that are "within the requested portions of the selected stream," the device could not subsequently decrypt and play back the "protected video" for the viewer to watch. *See id.*

Neither claim 1 nor the patent as a whole encompasses the incoherent implementation covered by DivX's interpretation. Rather, claim 1 covers what its words recite: locating encryption information that identifies encrypted portions of frames of video within the requested portions—a step that ensures that those frames within the requested portions can then be "decrypt[ed]" and "play[ed] back" for the viewer to watch. Appx118(27:54-63). Claim 1's context thus

supports that the "encrypted portions of frames of video"—not the "encryption information"—are required to be "within" the requested portions of the selected stream.

### B. DivX's Specification-Based Arguments Do Not Justify The Panel Majority's Interpretation

DivX does not deny that the patent contains embodiments that are agnostic as to the placement of the encryption information. Br. 45; Opening Br. 47-51. DivX also identifies no language in the '588 patent suggesting that the placement of encryption information is "important, essential, necessary, or the 'present invention.'" *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1373 (Fed. Cir. 2014). Instead, DivX asks this Court to repeat the panel majority's error by limiting the scope of limitation [*l*] based on select embodiments. Br. 22. DivX's arguments fail for several reasons.

#### 1. The placement of encryption information is not a "central aspect" of the claims

Contrary to DivX's assertion (Br. 23), placing encryption information in the requested portions of the selected stream is not a "central aspect" of the purported invention.

***First***, DivX errs in casting the panel majority's decision as reliant on "factual findings rooted in expert testimony" to which this Court should defer. Br. 17, 28-29, 47. The panel majority made no findings regarding, for example,

established "usage of trade or locality" or "the background science or the meaning of a term in the relevant art." *Teva*, 574 U.S. at 331. Rather, the panel majority relied on Dr. Nielson only for his identification of a "modified Matroska file format" in the specification. Appx16; Appx24. The panel majority's focus was thus firmly on the intrinsic evidence, which this Court can consider as effectively as the Board.[3]

***Second***, Dr. Nielson's opinion was based solely on the flawed premise that the purported invention ***requires*** a modified Matroska file designed to place the encryption information within the requested portions of the selected stream. Appx9461-9462(¶90). But as Netflix explained (Br. 40, 43), DivX's cited support makes clear that not all embodiments require a modified Matroska file. Appx108(7:58-62) ("***an*** embodiment"); Appx109(9:13-29); Appx110(11:45-50) ("***many*** embodiments"); Appx111(13:51-63) (same); Appx116(23:33-38) (same); *see also* Appx9461-9462(¶90) (same); Appx114(20:20-22) ("***other*** embodiments"); Appx105(2:42-46) (DivX's commercial product). Rather than respond substantively, DivX misleadingly omits the key language in order to suggest that the modified Matroska file is used in all embodiments. *Compare, e.g.*,

[3] DivX acknowledges that conclusory expert testimony cannot support the panel majority's construction. Br. 48. But DivX does not dispute that Dr. Nielson's testimony regarding the claim language's plain meaning was entirely conclusory. Opening Br. 60-61.

Appx109(9:13-29) ("[i]n many embodiments, the Matroska container file is a specialized Matroska container file") *and* Appx110(11:45-50) ("[i]n many embodiments, the Matroska container files are specialized Matroska container files that include enhancements") *with* Br. 24-25 (quoting these passages, but omitting "in many embodiments"). The Court should not be fooled: the specification nowhere limits the invention to a modified Matroska file.

Moreover, when read in full, the embodiment on which Dr. Nielson primarily relied does not even mention "encryption information," but rather to a different feature, namely "common cryptographic information":

> "In many embodiments, the Matroska container files are specialized Matroska container files that include enhancements (i.e., elements that do not form part of the Matroska file format specification) that ***facilitate retrieval and decryption using common cryptographic information*** of specific portions of media during adaptive bitrate streaming."

Appx9461-9462(¶90) (quoting Appx110(11:45-50)) (original emphasis altered). DivX elsewhere recognizes that "common cryptographic information" is distinct from "encryption information." Br. 58-59. Further, the specification confirms that "common cryptographic information" refers to the common set of keys that DivX claimed was the '588 patent's alleged invention. *Infra* pp. 28-29; *see also, e.g.*, Appx75(Abstract); Appx75(Title).

DivX also asks this Court to ignore the patent's express statement that "many embodiments of the invention utilize a ***conventional***"—i.e., unmodified—

"Matroska container." Appx114(20:27-32). DivX argues that this statement purportedly relates to the "size of each of the cluster elements." Br. 49. But the patent refers to a "conventional Matroska container" without limitation and does not confine this conventionality to the size of cluster elements. Appx114(20:27-32). And contrary to DivX's suggestion (Br. 49), Netflix expressly preserved this point. Appx11659(62:17-23) ("[m]any embodiments of the invention utilize the conventional Matroska container").[4]

Further, the '588 patent confirms that information can either be included in a modified Matroska container or, if a "conventional Matroska container" is used, in a "separate index file" such as a "top level index file." Appx114(20:27-38). This data structure parallels the claims of the '522 patent, which use a top-level index file to store encryption information outside of the requested portions of the selected stream. *Infra* pp. 27-30.

In any event, even if all the embodiments had disclosed a modified Matroska container (they do not), it would still have been reversible error to confine limitation [*l*] based on those embodiments. *See Applications in Internet Time, LLC*

---

[4] DivX argues that a conventional Matroska container "may also be used in full encryption systems." Br. 50 n.4. But the '588 patent references using a conventional Matroska container in "many embodiments ***of the invention***," i.e., the claimed partial encryption system. Appx114(20:27-32).

*v. Salesforce, Inc.*, No. 24-1133, 2024 WL 4456271, at *3 (Fed. Cir. Oct. 10, 2024).

***Third***, DivX does not deny that the original claims did not recite the phrase "within the requested portions of the selected stream of protected video," which refutes Dr. Nielson's conclusory assertion that such a limitation was central to the invention. Opening Br. 58. DivX again tries to dodge the issue by arguing waiver (Br. 4, 12-13), but "[t]he doctrine of waiver does not preclude a party from supporting its original claim construction with new citations to intrinsic evidence of record." *Seabed Geosolutions (US) Inc. v. Magseis FF LLC*, 8 F.4th 1285, 1289-1290 (Fed. Cir. 2021); *see also Inverness Med. Switz. GmbH v. Warner Lambert Co*., 309 F.3d 1373, 1380-1382 (Fed. Cir. 2002) (no forfeiture of argument that "provided additional support" for "previously argued claim construction").

DivX attempts to minimize the prosecution history by asserting that the panel majority concluded that "the original claims required the claimed encryption information to be 'within' (not outside) of the selected stream." Br. 57 (citing Appx21). But the panel majority made no such determination; it concluded only that, contrary to the dissent's view, "the original recitation of limitation [l]" was no "clearer" regarding whether limitation [*l*] "'sought to require using encryption parameters to identify encrypted portions.'" Appx21.

DivX also attempts to cast the prosecution history as ambiguous. Br. 56-57. But it is clear, indeed undisputed, that the original claims did not recite "within the requested portions of the selected stream of protected video." *Id.* Accordingly, DivX's cited cases are distinguishable. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005) (citing cases involving "ambigu[ous]" prosecution histories); *Inverness*, 309 F.3d at 1382 (prosecution history was "ambiguous"); *Athletic Alternatives, Inc. v. Prince Mfg., Inc.*, 73 F.3d 1573, 1580 (Fed. Cir. 1996) (prosecution history contained "contradictory interpretive strands").

***Fourth***, Dr. Nielson's opinion contradicts DivX's own characterization of the claimed technology in the parallel district court proceeding. Opening Br. 59. DivX responds that it "never argued" that the placement of encryption information was "the ***only*** significant aspect of the invention." Br. 26. DivX whistles past the graveyard. The point is that, when describing the "Technical Solutions and Benefits Provided by the '588 Invention" before the district court, DivX did not mention the placement of encryption information ***at all***, instead emphasizing, for example, the use of "common keys." Appx5808-5809(¶¶226-228). If the placement of encryption information were in fact "central" to the purported invention, DivX would not have ignored it entirely. Opening Br. 59.

***Fifth***, DivX suggests in its background section—though with no developed argument—that the '588 patent "discloses novel systems and methods for quickly

locating partial frame encryption information" by placing the encryption information within the requested portions of video. Br. 7. None of DivX's cited evidence supports its attorney argument. Appx9459-9462(¶¶85-90) (nowhere discussing "quickly locating" encryption information); Appx9466-9467(¶¶101-102) (attempting to distinguish prior art reference as not disclosing alternative streams); Appx111(13:11-21) (referring to "***common cryptographic*** information" and not ascribing importance to "quickly locating" ***encryption*** information).

Dr. Nielson's opinion thus cannot support the panel majority's flawed construction. *See, e.g.*, *BASF Agro B.V. v. Makhteshim Agan of N. Am., Inc.*, 519 F. App'x 1008, 1018 (Fed. Cir. 2013) ("Even testimony from a qualified expert has little probative value if it is inconsistent with the intrinsic record."); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1584-1585 (Fed. Cir. 1996) ("[T]he expert testimony, which was inconsistent with the specification and file history, should have been accorded no weight."). And DivX's cited cases (Br. 26) are fully distinguishable. *See Acoustic Tech., Inc. v. Itron Networked Sols., Inc.*, 949 F.3d 1366, 1376 (Fed. Cir. 2020) (expert's "testimony was not conclusory or otherwise defective"); *Koninklijke Philips N.V. v. Google LLC*, 948 F.3d 1330, 1338 (Fed. Cir. 2020) (expert's testimony "corroborated by" prior art).

### 2. The panel majority erred by confining limitation [*l*] based on select embodiments

DivX identifies no disclosure demonstrating a clear intention to limit the scope of limitation [*l*] as the panel majority did, and there is none. Opening Br. 40-47. Instead, DivX argues that, "in *every embodiment*," the encryption information is placed within the requested portion of the selected stream. Br. 27 (quoting Appx14). DivX's argument is both legally irrelevant and refuted by the specification.

At the outset, even if it were true that "every embodiment" in the '588 patent placed encryption information in the requested portions of the selected stream—it is not—that would not matter. Opening Br. 39-41. DivX attempts to distinguish the case law finding such evidence insufficient as "involv[ing] constructions where words were added to the limitation." Br. 53. But limitation [*l*] cannot support the panel majority's construction without modifying the claim language's ordinary meaning. *Supra* pp. 2-5; Opening Br. 18, 32-34. Accordingly, it was error for the panel majority to constrain limitation [*l*]'s meaning based on certain embodiments. *Aventis Pharma S.A. v. Hospira, Inc.*, 675 F.3d 1324, 1330 (Fed. Cir. 2012) ("not enough that the only embodiments, or all of the embodiments, contain a particular limitation" (quotation marks omitted)).[5]

---

[5] DivX does not attempt to distinguish *Aventis*. Br. 53.

More importantly, however, the patent contains embodiments that are agnostic to the placement of encryption information. Opening Br. 47-51. DivX tellingly does not deny this; instead, it asks this Court to ignore these parts of the specification. Br. 45-51. DivX's argument fails for five reasons.

***First***, DivX argues that "silence is generally not disclosure." Br. 45 (quotation marks omitted). But that is not the point. Rather, the fact that some embodiments do not even address where the encryption information is stored is powerful evidence that the patentee did not intend to limit the invention based on the location of the encryption information. Opening Br. 48-49. Under these circumstances, the panel majority erred in confining limitation [*l*] to embodiments that place the encryption information in the requested portions of the selected stream. *Hill-Rom*, 755 F.3d at 1373 (error to limit claims to "wired datalink" even though the patent did not disclose using "wireless datalink"). *Novartis Pharmaceuticals Corp. v. Accord Healthcare, Inc.*, 38 F.4th 1013, 1017-1018 (Fed. Cir. 2022), is off-point, as it considered whether a "negative claim limitation" (absence of a loading dose) was supported by the written description. Mere non-recitation of a loading dose in the specification was insufficient to support a negative limitation without disclosure of "a reason to exclude the relevant [element].'" *Id.* at 1016 (citation omitted). *Novartis* did not address this situation, where the patent ***does*** disclose embodiments that are agnostic as to

whether the encryption information is or is not within the requested portions of the selected stream.

***Second***, DivX's pizza box analogy makes no sense. Br. 45. Instructions on the back of a frozen pizza box govern that specific pizza. But it would be improper to conclude that ***all*** frozen pizzas must be cooked on the oven's top rack just because some pizzas so instruct. Here, it is improper to confine limitation [*l*] just because some embodiments place the encryption information within the requested portions of video, where others are not so limited. *Supra* p. 22.

***Third***, DivX's reliance on the panel majority's statement that it "need[ed] to look to where the Specification discloses the encryption information is located," Br. 46 (quoting Appx17-18), fails. Even where a patent does not disclose ***any alternative embodiment***, it is improper to limit the claims absent clear evidence of intent. *Lowe v. ShieldMark, Inc.*, No. 2021-2164, 2022 WL 636100, at *5 (Fed. Cir. Mar. 4, 2024) (not limiting that "the specification uniformly describe[d] the claimed invention as requiring a tape with shoulders"); *HBAC Matchmaker Media, Inc. v. Google Inc.*, 650 F. App'x 990, 994 (Fed. Cir. 2016) (not limiting that all embodiments disclosed "a conventional TV system"); *SSI Techs., LLC v. Dongguan Zhengyang Electronic Mechanical Ltd.*, 59 F.4th 1328, 1336 (Fed. Cir. 2023) (not limiting that "each embodiment" contained "a mesh filter, which has

very small openings”). There is no such evidence here. Opening Br. 39-41; *supra* p. 21.

***Fourth***, DivX cannot dismiss embodiments that do not restrict the location of the encryption information merely because they are in the “summary of the invention.” Br. 46. This Court frequently looks to the summary of the invention when interpreting claim scope. *See, e.g.*, *Applications in Internet Time*, 2024 WL 4456271 , at *4 (looking to “Abstract, Background, and Summary of the Invention sections”); *Continental Circuits LLC v. Intel Corp*., 915 F.3d 788, 798 (Fed. Cir. 2019) (looking to “summary section”).

***Fifth***, DivX (Br. 50) tries to wave away the specification’s disclosure of flexibility in the storage of DRM information, namely that “any of a variety of mechanisms can be utilized to store DRM information within a Matroska container in accordance with the embodiments of the invention.” Appx109(9:29-32). DivX insists that this language has “no bearing upon ***where*** the encryption information is stored” (Br. 50-51), but DivX again misses the point. This portion of the specification makes clear that the inventors intended flexibility in the storage of DRM information and did not intend to limit it based on any disclosed embodiments. Opening Br. 49.

### 3. DivX's other arguments fail

***First***, contrary to DivX's assertion (Br. 51), the panel majority did import limitations from the embodiments into the claims. The panel majority's decision was based in part on its conclusion that embodiments specifying a placement of encryption information "repeatedly and consistently characterized" the purported invention and accordingly narrowed limitation [*l*]. Appx18 (quotation marks omitted). Further, both DivX and the panel majority felt compelled to modify the claim language to add commas or additional words to defend their construction. Opening Br. 3, 18-19, 32-34.

***Second***, DivX's cases (Br. 52) involved patents that, unlike the '588 patent, clearly limited the claims to specific technology. In *Enzo Biochem, Inc. v. Applera Corp.*, the district court's construction improperly "read out" multiple claim phrases that "the inventors repeatedly emphasized." 780 F.3d 1149, 1154, 1156 (Fed. Cir. 2015). Here, Netflix's construction gives effect to all words in limitation [*l*], and the '588 patent does not "repeatedly emphasize[]" the placement of encryption information as important to the invention—indeed, quite the opposite. *Supra* pp. 14-24; *see also Flex-Rest, LLC v. Steelcase, Inc.*, 455 F.3d 1351, 1361 (Fed. Cir. 2006) (rejected construction would render claim element "entirely superfluous"); *Ultimate Pointer, L.L.C. v. Nintendo Co*., 816 F.3d 816, 822-823 (Fed. Cir. 2016) ("repeated derogatory statements" indicated "that the criticized

technologies were not intended to be within the scope of the claims"); *Kyocera Wireless Corp. v. International Trade Comm'n*, 545 F.3d 1340, 1348 (Fed. Cir. 2008) ("specification consistently t[aught] that the relevant difference between the two claimed wireless communications [wa]s their method of communication"); *Chamberlain Grp., Inc. v. Lear Corp.*, 516 F.3d 1331, 1337-1339 (Fed. Cir. 2008) (district court's construction was "internally inconsistent and contradictory to the rest of the patent"). More applicable are those cases rejecting constructions narrower than the claim language, such as *SuperGuide*, 358 F.3d at 880, which DivX does not even attempt to distinguish.

***Third***, DivX does not deny that the Board's Institution Decision expressly recognized that embodiments "also support [Netflix's] more grammatically correct construction." Appx11244; Appx11692. DivX's only response is that the panel majority changed its ultimate result on remand from this Court. Br. 54.[6] But the Board did not revise its original (correct) understanding that the embodiments DivX points to are consistent with Netflix's construction of limitation [*l*] as well. Appx17. Moreover, DivX does not, and cannot, identify any additional evidence or argument submitted on remand on this issue. This is thus not a case where

---

6 DivX's attempt to dismiss the Institution Decision and original Final Written Decision because they were written by APJ Turner makes no sense; APJ Turner was writing for the whole Board panel.

"further development of the record" justifies the panel majority's about-face. *TriVascular, Inc. v. Samuels*, 812 F.3d 1056, 1068 (Fed. Cir. 2016).[7]

### C. The Panel Majority's Construction Is Inconsistent With The '588 Patent's Related Patents

DivX does not dispute other patents in the same family demonstrate that DivX knew how to draft claims specifying where the encryption information is stored. Opening Br. 57-58. Instead, DivX asks the Court to simply ignore that point. Br. 63. But this Court routinely considers whether a patentee "knew how" to draft a particular limitation "when it wanted to" as evidence that a given construction should be rejected. *E.g.*, *Pulse Elecs., Inc. v. U.D. Elec. Corp.*, 860 F. App'x 735, 738 (Fed. Cir. 2021).

The '522 patent additionally confirms that DivX represented to the Patent Office that the common specification supports placing the encryption information ***outside*** the requested portions of the selective stream. Opening Br. 51-56. DivX's apparent attempt to characterize the "DRM information" in the '522 patent as relating to cryptographic keys and not encryption information (Br. 58) is

[7] In *UUSI, LLC v. United States* (Br. 54), the Court of Claims declined to consider the Institution Decision as intrinsic evidence because the Board "did not have any input from the patent owner" on the construction of the relevant term. 131 Fed. Cl. 244, 265 (2017). Here, the Institution Decision and the original Final Written Decision undisputedly reflected DivX's "input." Appx31-34; Appx11692; Appx11242-11244.

inconsistent with the ’522 patent’s claim language and specification, as well as DivX’s arguments before the Board.

***First***, as DivX acknowledges, claim 1 of the ’522 patent requires the top-level index file to contain both “a set of DRM information that identifies protected portions of the alternative streams of protected video” and “***frame keys*** to utilize in accessing the protected portions of the alternative streams.” Br. 59 (quoting Appx6328(27:38-41)). DivX’s argument that the “set of DRM information” refers to cryptographic keys would impermissibly render the reference to the “frame keys” limitation superfluous. *See, e.g.*, *Wasica Fin. GmbH v. Continental Auto. Sys., Inc*., 853 F.3d 1272, 1288 n.10 (Fed. Cir. 2017) (“highly disfavored” to construe terms in a way that renders them “superfluous”); Appx108(8:47-49) (“frame keys” are a type of “cryptographic information”).

***Second***, DivX identifies nothing in the specification using “DRM information” to refer to cryptographic keys. Br. 58. Rather, all of DivX’s citations refer to the cryptographic keys as “common cryptographic keys” or “cryptographic information.” *See* Appx75(Abstract); Appx108(8:55-61); Appx111(13:11-21); Appx106(3:42-43).

By contrast, the specification uses “DRM Information” to refer to information that “indicat[es]” the encrypted portions of video—i.e., encryption information. Appx106(3:14-30) (referring to “DRM information indicating

portions of frames of video that are encrypted" distinctly from "common cryptographic information that is used to access the encrypted portion of the protected frame"); Appx107(5:4-23) (similar); Appx108(7:8-25) (similar).

***Third***, DivX and its expert expressly equated "DRMInfo" and "DRM Information" with encryption information. *See, e.g.*, Appx11628(31:21-22) (DivX's counsel: "We are not arguing that encryption information is different from DRM information."); Appx9457(¶79) (DivX's expert discussing storing "DRM information" within Matroska file); Appx11330-11331 (pointing to testimony regarding "DRM information" as purported support that "'DRM Info' (*i.e.*, encryption information)" was "located within each BlockGroup"); Appx11329 ("DRMInfo (*i.e.*, 'encryption information')").[8]

Separately, DivX argues that the "DRM information" in claim 1 of the '522 patent is distinct from the encryption information in claim 1 of the '588 patent because the former does not identify encrypted portions of a frame of video when partial frame encryption is used. Br. 59. DivX again goes astray. The "DRM information" recited by the '522 patent claims is broader than, ***but inclusive of***, encryption information that identifies encrypted portions of a frame of video, as

[8] Because both parties equated "DRMInfo" and "DRM Information," the panel majority indisputably erred (at Appx20-21) by treating these terms differently. Opening Br. 43.

Netflix explained (Opening Br. 55-56). Indeed, DivX gives this point away by admitting that dependent claim 14 of the '522 patent, which recites "a DRMinfo element indicating at least a portion of the encrypted frame of video that is encrypted," is "similar to claim 1 of the '588." Br. 60-61 (quoting Appx6329). But claim 14 of the '522 patent ***depends from claim 1***, meaning that claim 1 of the '522 patent includes (though is not limited to) the partial frame encryption recited in claim 14 that DivX admits is similar to claim 1 of the '588 patent. Appx6329; *see Littelfuse, Inc. v. Mersen USA EP Corp.*, 29 F.4th 1376, 1380 (Fed. Cir. 2022). Thus, the patents' common specification supports placing encryption information ***outside*** the requested portions of the selective stream.

### D. Although Not Necessary, Netflix's Expert's Testimony Also Refutes The Panel Majority's Construction

DivX asserts that it submitted "unrebutted" expert testimony on limitation [*l*]'s construction. Br. 11-12. Not so. Netflix's expert, Dr. McDaniel, consistently testified that the encryption information can be stored outside the requested portions of the selected stream. Opening Br. 49-51. For example, Dr. McDaniel explained that a skilled artisan "would know that it would be possible" to place the claimed encryption information outside the requested portions of the selected stream. Appx9543(53:1-11). DivX does not dispute the accuracy of this statement; instead, DivX argues (Br. 48) that this "does not suggest there is any disclosure to this [e]ffect." But Dr. McDaniel expressly referenced "embodiments

that don't have an explicit description of where the [encryption] information lies" (Appx9545(55:10-15))—i.e., embodiments agnostic as to the location of the encryption information.

DivX (Br. 45) also improperly truncates Dr. McDaniel's deposition testimony. When asked whether there was "any embodiment of the '588 patent that ***is actually required in the '588 patent*** where the encryption information of a given cluster is not located within that cluster," he answered: "[P]utting aside … how somebody skilled in the art would interpret the '588, and ***putting aside the embodiments that don't have an explicit description of where the information lies***, there is not an explicit embodiment." Appx9545(55:5-15). That answer was fully consistent with Netflix's position, which has never been that the encryption information is "***actually required***" to be outside the requested portions of the selected stream. Rather, the point is that the encryption information may be inside ***or*** outside the requested portions, a position Dr. McDaniel supported by pointing out the embodiments that do not place the encryption information within the requested portions of the selected stream, but rather do not limit "where the information lies." *Id.*

Likewise, Dr. McDaniel did not "confirm one-by-one that every embodiment supported DivX's position." Br. 45. The passage DivX cites only asked Dr. McDaniel about embodiments beginning in column 9. Appx9536-

9539(46:21-49:20). DivX did not ask Dr. McDaniel about the embodiments that are agnostic regarding the placement of encryption information and appear earlier in the ’588 patent, such as the first two embodiments in column 3. Appx106(3:1-12, 3:13-30); Opening Br. 47-51.

DivX carefully ignores the fact that its expert, Dr. Nielson, did not say that every embodiment places encryption information within the requested portions of the selected stream. Rather, Dr. Nielson focused only on embodiments “where a location for the encryption information is disclosed.” Appx9460(¶88). As explained above (pp. 14-24), claim 1’s scope cannot be limited merely because some embodiments disclose a placement for encryption information—particularly where, as Dr. McDaniel explained and the specification makes clear, other embodiments do not.

## CONCLUSION

The Court should vacate the Final Written Decision and remand for further proceedings.

Respectfully submitted,

/s/ Mark C. Fleming

MARK C. FLEMING
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000
Mark.Fleming@wilmerhale.com

*Attorneys for Appellant Netflix, Inc.*

NORA N. XU
WILMER CUTLER PICKERING
HALE AND DORR LLP
2100 Pennsylvania Avenue, N.W.
Washington, DC 20006
(202) 663-6000

LAUREN E. MATLOCK-COLANGELO
WILMER CUTLER PICKERING
HALE AND DORR LLP
7 World Trade Center,
250 Greenwich Street
New York, NY 10007
(212) 230-8800

November 1, 2024

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because:

1. The filing has been prepared using a proportionally-spaced typeface and includes 6,988 words.

2. The filing has been prepared using Microsoft Word for Office 365 in 14-point Times New Roman font. As permitted by Fed. R. App. P. 32(g), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

/s/ Mark C. Fleming
MARK C. FLEMING
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

November 1, 2024